No. 88,761

MARY SYLVIA MILLER, *Appellee,* v. STATE OF KANSAS DEPARTMENT OF SOCIAL AND REHABILITATION SERVICES, *Appellant.*

64 P.3d 395

Opinion filed March 7, 2003.

*Reid Stacey,* of Kansas Department of Social and Rehabilitation Services, argued the cause and was on the briefs for appellant.

*John W. Jordan,* of Wichita, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

Nuss, J.: This case involves the interpretation of Medicaid statutes, as well as Edward Miller's will and its pourover trust created for the lifetime benefit of his surviving spouse, Mary Sylvia Miller. At issue is whether the State of Kansas Department of Social and Rehabilitation Services (SRS) should consider any part of the trust principal to be a resource available to Mrs. Miller when considering her application for Medicaid benefits after her husband's death. An SRS case manager, a presiding officer from the SRS Office of Administrative Hearings, and the Appeals Committee of the Kansas Department of Administration's Office of Administrative Hearings all determined at least a portion of the principal was an available resource and she was ineligible for benefits. Upon further appeal by Mrs. Miller, the district court reversed and remanded the case to SRS for processing of her claim.

SRS timely appealed. We transferred from the Court of Appeals on our own motion pursuant to K.S.A. 20-3018(c).

We examine three issues on appeal. First, whether Mrs. Miller exhausted her administrative remedies before filing her petition for judicial review. Second, whether the trust is a support trust which makes Mrs. Miller ineligible to receive Medicaid benefits. Third, even if the trust is not a support trust, whether Mrs. Miller is nevertheless ineligible to receive benefits because the trust contains her funds. As more fully discussed below, we hold Mrs. Miller did exhaust her administrative remedies and that the trust is not a support trust, but that the trust contains her funds. She is therefore ineligible for Medicaid, and we reverse.

Facts

By the terms of Edward Miller's will dated December 21, 1978, he provided for the payment of his final expenses and devise of certain limited items of personal tangible property to his children. His will also contained provisions for his wife in the event that she survived him:

"IV.

"In the event that my wife, Sylvia Miller, survives me, I give, devise and bequeath all of the rest, residue and remainder of my property, of whatever kind

and wherever located, unto my trustee herein-after named in trust to be held, administered and disposed of as follows:

"A. I am the owner of the residence at . . . Wichita, Kansas, where my wife and I now reside. For so long as my wife, SYLVIA MILLER, desires to reside in such residence, the trustee shall not sell or dispose of such property, but shall maintain the premises . . . .

"B. During the lifetime of my wife, the trustee shall distribute the net income of the trust in quarterly or more frequent installments to my wife.

"C. In addition to the payment of the net income, my trustee may distribute to or for the benefit of my wife, from time to time, so much of the principal of the trust as the trustee, in its sole discretion, may determine is necessary to provide for my wife's care, support, health and wellbeing, giving due regard to the standard of living she enjoyed at the time of my death, and to such other resources or sources of income which may then be available to my said wife.

"D. Upon the death of my wife, the trustee shall pay over and distribute any principal remaining in trust and any undistributed income to my children, CAROLYN J. BAIRD, MICHAEL E. MILLER and JOSEPH R. MILLER, in equal shares."

On December 22, 1978, 1 day after Mr. Miller completed his will and simultaneous with his adoption of a codicil, Mrs. Miller signed a consent to the will, accepting the rights established in the eventual trust in lieu of her spousal entitlements granted in K.S.A. 59-6a202. On April 23, 1995, Mr. Miller died, with Mrs. Miller and his three children surviving him.

Mrs. Miller served as the executrix of the will, submitted it to probate and settled his estate. On January 30, 1996, a Sedgwick County District Court entered a final order closing probate of the estate and construing the will to distribute the entire residuary estate to Mr. Miller's daughter, Carolyn Baird (now Dugan), as Trustee of the Edward A. Miller Testamentary Trust. Since then, Mrs. Dugan has paid Mrs. Miller a total of $1,000 per month from the income and principal of the trust.

After Mrs. Miller's health deteriorated, she applied for Medicaid assistance for the payment of her nursing home expenses on November 9, 2000. As SRS is the state agency charged with administration of the Medicaid program, it requested a copy of the trust and learned the trust's current value exceeded $190,000. SRS considered the full amount of the trust to be available resources from which she could pay her bills. It therefore determined Mrs. Miller

was ineligible for Medicaid. Mrs. Miller timely appealed SRS's decision.

In a hearing before an Office of Administrative Hearings presiding officer, Mrs. Miller acknowledged the income of the trust should be attributed to her but denied she had access to the principal. Mrs. Miller claimed the trust was discretionary and that the entire principal of the trust could not be attributed to her for Medicaid eligibility determination purposes. On April 4, 2001, the presiding officer concluded: (1) the income of the trust should be attributed to Mrs. Miller for eligibility determination purposes, (2) the Edward A. Miller Trust was a discretionary trust, and (3) to the extent that Mrs. Miller waived her rights to the spousal elective share of her husband's estate, she created a trust which would be an available resource when determining her eligibility.

On April 8, 2001, Mrs. Miller appealed the presiding officer's initial order to the Appeals Committee of the Kansas Department of Administration's Office of Administrative Hearings. First, she alleged she had never transferred funds into the trust. Second, she argued, by virtue of her waiver executed in 1978, she had no interest in the property of her husband's estate. Following a hearing, the Appeals Committee affirmed the presiding officer's initial order on July 18, 2001.

Mrs. Miller then petitioned for review by the district court. After a hearing, the district court determined it had jurisdiction under the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.*, and that Mrs. Miller had exhausted all required administrative remedies prior to her petition for review. The court further held that because the Edward A. Miller Trust was a discretionary trust funded solely with his property, the principal of the trust was not available when considering Mrs. Miller's Medicaid eligibility.

## Discussion/Analysis

Issue 1: *Did Mrs. Miller exhaust her administrative remedies before filing for judicial review?*

Our threshold issue is whether Mrs. Miller exhausted her administrative remedies. If she did not, then this court has no juris-

diction for the appeal. See *NEA-Coffeyville v. U.S.D. No. 445*, 268 Kan. 384, 387-89, 996 P.2d 821 (2000). Whether a party is required to or has failed to exhaust its administrative remedies is a question of law over which we have unlimited review. *NEA-Coffeyville*, 268 Kan. at 387.

In support of SRS's argument that the district court erred in finding Mrs. Miller had exhausted her administrative remedies, it claims she was required to have first requested that the Appeals Committee reconsider its final order before she petitioned for judicial review. This contention is incorrect. K.S.A. 2002 Supp. 77-529(a)(1) clearly provides that the filing of a petition for an agency's reconsideration of a final order is not a prerequisite except for orders of the Kansas Human Rights Commission, the Kansas Corporation Commission, and the Board of Tax Appeals.

Issue 2: *Is this a support trust which makes Mrs. Miller ineligible for benefits?*

SRS disputes the determinations by the Appeals Committee and the district court that the trust is a discretionary trust, and not a support trust. We make the same review of the Appeals Committee's prior determination as did the district court. *Hemphill v. Kansas Dept. of Revenue*, 270 Kan. 83, 84, 11 P.3d 1165 (2000). Specifically, under K.S.A. 77-621(c)(4), we determine whether it had erroneously interpreted or applied the law. We also determine the nature, construction, and legal effect of the will and resultant trust. These are all questions of law over which we have unlimited review. *Kindel v. Ferco Rental, Inc.*, 258 Kan. 272, 277, 899 P.2d 1058 (1995); *State ex rel. Secretary of SRS v. Jackson*, 249 Kan. 635, 641, 822 P.2d 1033 (1991).

Before we determine if the trust is a support or a discretionary trust, a short review of Medicaid and the significance of the trust's legal label is warranted. Congress enacted the federal Medicaid program as Title XIX of the Social Security Act in 1965 as a cooperative federal-state program designed to provide health care to the neediest individuals. See *Williams v. Kansas Dept. of SRS*, 258 Kan. 161, 164, 899 P.2d 452 (1995). Congress has stated that Medicaid is a program designed to provide basic medical care for those

lacking the resources to care for themselves; "[financial planning] techniques that potentially enrich heirs at the expense of poor people are unacceptable." H.R. Rep. No. 265, 99th Cong., lst Sess., pt. 1, at 71-72 (1985). Similarly, this court has held that public assistance is available to the destitute and truly needy and is not intended to provide subsistence to those with other resources. *Jackson*, 249 Kan. at 644.

Since Kansas has elected to accept federal funds to provide health care to the neediest individuals, and is therefore bound to follow federal laws which govern Medicaid eligibility, this state has joined the federal government and other states in guarding against providing health care for individuals who have their own resources. Toward that end, SRS has been especially watchful for applicants' financial planning techniques which it believes violate the purpose of the Medicaid laws and the accompanying Kansas statutes and regulations. See, *e.g., Williams,* 258 Kan. at 168; *Myers v. Kansas Dept. of SRS,* 254 Kan. 467, 472-73, 866 P.2d 1052 (1994); *Jackson,* 249 Kan. at 644; *Martin v. Kansas Dept. of SRS,* 26 Kan. App. 2d 511, 988 P.2d 1217 (1999); *Simpson v. Kansas Dept. of SRS,* 21 Kan. App. 2d 680, 906 P.2d 174 (1995), *rev. denied* 259 Kan. 928 (1996). These cases and others provide detailed background information elaborating on Medicaid's purposes and history that need not be repeated here.

These Kansas cases reveal that SRS has been particularly vigilant regarding trusts. Frequently the salient issue has been whether a trust is a support trust or a discretionary trust. A support trust exists when the trustee is required to inquire into the basic support needs of the beneficiary and to provide for those needs. *Myers,* 254 Kan. at 471. Eligibility for Medicaid depends on the assets "available" to the applicant, and the support trust is always considered such an available asset. *Williams,* 258 Kan. at 165 (citing 42 U.S.C. § 1396a(a)(17) [1988]); *Myers,* 254 Kan. at 471.

By contrast, a discretionary trust exists when the beneficiary has no right, as a matter of law, to require the trustee to turn over to him or her the principal of the estate or any part of it. *Jackson,* 249 Kan. at 639-41 (citing *Watts v. McKay,* 160 Kan. 377, 162 P.2d 82 [1945]). Because the trustee has complete authority to withhold

trust assets, a discretionary trust is often not considered an asset/ resource available to the beneficiary for determining Medicaid eligibility. See *Myers,* 254 Kan. at 471; *Jackson,* 249 Kan. at 639.

In the case at hand, the parties agree that the trust terms require the trustee to pay Mrs. Miller the income. See Edward Miller's Will, Section IV, B quoted previously ("the trustee shall distribute the net income of the trust"). The income should therefore be considered an asset available to Mrs. Miller when considering Medicaid eligibility. See *Jackson,* 249 Kan. at 641-42.

The trustee's payment of principal is another matter. We agree with Mrs. Miller that its payment is discretionary with the trustee under the trust terms. Edward Miller's Will, Section IV, C, states in relevant part:

"[M]y trustee *may* distribute to or for the benefit of my wife, from time to time, so much of the principal of the trust *as the trustee, in its sole discretion, may determine* is necessary to provide for my wife's care, support, health and wellbeing, giving due regard to the standard of living she enjoyed at the time of my death, and to such other resources or sources of income which may then be available to my said wife." (Emphasis added.)

We further agree with Mrs. Miller that the principal is therefore not available to her as an asset under the facts and holding of *Myers,* 254 Kan. at 469. In *Myers,* a mother's will created a trust for the care, support, and maintenance of her disabled son during his lifetime. She bequeathed the sum of $110,000 to the trust. Like the case at hand, the principal and undistributed income were to be distributed to relatives upon her beneficiary's death. The trust's language vesting discretionary powers in the trustee was even weaker than the trust language in the case at hand. The *Myers'* trust language provided that the trustee shall "pay over so much or all the net income and principal to my son *as my trustee deems advisable* for his care, support, maintenance, emergencies and welfare." (Emphasis added.) 254 Kan. at 470. We concluded the trust was discretionary, not a support trust, and neither the principal nor the income was available to the beneficiary for determining Medicaid eligibility. 254 Kan. 477-78.

Issue 3: *Does the trust contain Mrs. Miller's funds which make her ineligible to receive Medicaid benefits?*

For SRS's final argument, it alleges that even if the trust is discretionary as to payment of principal, Mrs. Miller nevertheless is ineligible to receive Medicaid benefits because the trust contains her funds. Specifically, SRS claims her consent to the terms of her husband's will, in lieu of her taking her statutory elective share as a spouse, essentially placed her spousal share of the marital estate in the discretionary trust, which makes it an asset currently available to her for determining Medicaid eligibility. For the reasons provided in issue 2 above, our review of this question of law is unlimited. We agree with SRS.

We begin this analysis by returning to a review of Medicaid. As the program evolved, Congress was faced with its escalating costs. As a result, in 1986 Congress amended Medicaid statutes not only to reduce costs but also to respond to the growing problem of individuals transferring their assets or placing them in irrevocable trusts for the purpose of qualifying for Medicaid assistance. *In re Guardianship & Conservatorship of Watkins,* 24 Kan. App. 2d 469, 471-72, 947 P.2d 45 (1997); *Matter of Kindt,* 542 N.W.2d 391 (Minn. App. 1996). The Supreme Judicial Court of Massachusetts described the substantial benefits of such irrevocable trusts whose distribution of assets was at the discretion of a trustee:

"Thus, a grantor: was able to qualify for public assistance without depleting his assets; could once more enjoy those assets if he no longer needed public assistance; and, if such a happy time did not come, could let them pass intact pursuant to the terms of the trust to his heirs. The grantor was able to have his cake and eat it too." *Cohen v. Commissioner of Division of Medical Assistance,* 423 Mass. 399, 403, 668 N.E.2d 769 (1996).

The 1986 amendment essentially provided that the assets of these Medicaid Qualifying Trusts (MQTs) would now be considered available to the settlor in determining his or her eligibility for Medicaid. See 42 U.S.C. § 1396a(k) (1988). During the amendment's passage, Congress reiterated its intent that Medicaid was designed to provide basic medical care for those without sufficient income or resources to provide for themselves. *Ramey v. Reinertson,* 268 F.3d 955, 958 (10th Cir. 2001). In recommending passage of what became 42 U.S.C. 1396a(k), the House Committee on Energy and Commerce felt

" 'compelled to state the obvious. . . . When affluent individuals use Medicaid qualifying trusts [*i.e.*, MQT's] and similar "techniques" to qualify for the program they are diverting scarce Federal and State resources from low-income elderly and disabled individuals, and poor women and children. This is unacceptable to the Committee.' [Citations omitted.]" *Ramey,* 268 F.3d at 961.

Consistent with Congress' direction, a number of courts have ruled that the 1986 amendment was passed to prevent *anyone,* regardless of affluence, from gaining Medicaid eligibility by placing assets in a trust that might eventually fall to the settlor's heirs. See *Matter of Kindt,* 542 N.W.2d at 395, and cases cited there. Courts have also broadly interpreted the statute to meet their understanding of Congress' intent. While noting a sole exception provided for in the 1986 amendment, one court held, "[b]y carving out this narrow exception, Congress implicitly evidenced an intent to embrace all other trusts within the ambit of MQTs," *i.e.*, as resources available to the Medicaid applicant. *Ronney v. DSS,* 210 Mich. App. 312, 319, 532 N.W.2d 910 (1995). The *Ronney* court further observed that this "intent of Congress" argument had been adopted in other jurisdictions. 210 Mich. App. at 319.

Despite Congress' efforts, the problems caused by creative financial planning persisted. Consequently, in 1993 Congress repealed the 1986 amendment and replaced it "by another statute even less forgiving of such trusts. See 42 U.S.C. § 1396p(d) (1993). This statute added stringent criteria regarding the treatment of MQTs such as the inclusion of the corpus and proceeds of various irrevocable trusts as countable resources." *Ramey,* 268 F.3d at 959. For example, the restrictions now apply without regard to the purposes for which the trust was established, whether the trustees have or exercise any discretion under the trust, or whether there are any restrictions on the making, timing, or use of distributions from the trust. See 42 U.S.C. § 1396p(d)(2)(C) (2000).

Congress' limitations apply to trusts regardless of when created: The restrictions of the 1986 amendment apply to trusts established on or before August 10, 1993, with the more stringent criteria of the 1993 amendment reserved for trusts established after August 10, 1993. *Ramey,* 268 F.3d at 961-62. (When Congress amended the Medicaid qualifications in 1993 to provide even more restric-

tive requirements, it did not at the same time intend to abandon all eligibility requirements for trusts created before August 10, 1993, and once again allow persons to divert scarce federal and state resources.); *Cook v. Dep't of Social Services,* 225 Mich. App. 318, 322-23, 570 N.W.2d 684 (1997). This court has agreed, acknowledging in *Williams,* 258 Kan. 161, that the 1986 amendment had been repealed in 1993, but applied to the trust created in 1992. In short, Congress obviously has intended to continuously prevent persons from diverting scarce federal and state resources from low-income elderly and disabled individuals through "formalistic devices to shelter assets, at Medicaid expense, for the potential benefits of heirs." *Matter of Kindt,* 542 N.W.2d at 396.

This court has wholly embraced Congress' goal, particularly in the area of discretionary trusts. The case of *Williams,* 258 Kan. 161, clearly reveals our endorsement. There, Mrs. Williams' daughter, Donna Squier, had become a quadriplegic after a motor vehicle accident. Mrs. Williams filed and settled a lawsuit based upon her daughter's personal injuries and placed the settlement proceeds exceeding $1.6 million in an irrevocable discretionary trust which she had executed the same day. Mrs. Williams was the named grantor; her daughter and two grandchildren were trust beneficiaries. As we stated there:

"Highly condensed, the 20-page trust agreement provides that 'the trustee shall take into consideration the applicable resources and income limitations of any public assistance program for which Donna Jo Squier is eligible when determining whether to make any discretionary distributions.' The trust goes on to state that 'no part of the corpus of the trust created herein shall be used to supplant or replace public assistance benefits,' and that 'for purposes of determining Donna Jo Squier's eligibility for such benefits, no part of the principal or income of trust shall be considered available to Donna Jo Squier.' The trustee is prohibited from knowingly exercising its discretion in a manner that would prevent Squier from receiving public assistance. The express intent is that no part of the trust income or principal be used to replace public assistance or in determining Squier's eligibility for public assistance. The purpose of the trust is to provide goods and services in addition to those provided by public assistance." 258 Kan. at 162-63.

SRS claimed the settlement proceeds were available assets which made the daughter ineligible for further Medicaid benefits. Mrs. Williams argued, among other things, that the trust was not

established by the same statutorily-required "individual" (her daughter) who had also applied for the Medicaid benefits, and it had not been established with her daughter's funds. We held that although the trust was established "in form" by the mother, it was created with the daughter's funds and was therefore established by the daughter. " 'A trust is established by the person who provides the consideration for the trust even though in form it is created by someone else.' " 258 Kan. at 166. Consequently, the same "individual" who had established the trust by funding it for her own benefit had also applied for Medicaid assistance. The trust funds therefore were resources available to the daughter when determining her Medicaid eligibility. We cited with approval the growing number of courts that had similarly placed substance over form in Medicaid cases. 258 Kan. at 167-69. We also held analogous the decisions where inheritances placed in trust had been declared as assets available for determining the beneficiary's Medicaid eligibility. 258 Kan. at 169-70.

Just as we expanded the statute's use of the term "individual" in *Williams* to meet Congress' intent, so do we now place substance over form in the case at hand. As a result, we hold that the discretionary trust's $190,000 in assets are, at least in part, the property of Mrs. Miller. As the surviving spouse of a decedent who died a resident of Kansas, she had a right to take an elective-share amount of the augmented estate. See K.S.A. 59-6a202. Since she and Mr. Miller were husband and wife at the time of the 1978 will, and still were at the time of his 1995 death, then she was entitled to 50% of the $190,000 estate. See K.S.A. 59-6a202(a)(1)(based upon over 15 years of marriage).

Her agreement to the terms of the 1978 will, which her husband could have changed at any time before his death with or without her approval, together with her decision to not make a claim against his probate estate in 1995, essentially resulted in her spousal elective share partially funding the trust after his death. As a result, for the purposes of Medicaid eligibility determination, we hold Mrs. Miller became a co-settlor of her husband's trust. Her funds are still in the trust, subject only to the trustee's discretion to pay her share of the principal to her or for her benefit. Therefore, in ac-

cordance with 42 U.S.C. § 1396p(d)(2)(C) and K.A.R. 30-6-109 (c) (2), (3), (4), and (5), Mrs. Miller is ineligible for Medicaid until those funds, approximating $95,000, are exhausted. See a similar determination in *Tannler v. DHSS*, 211 Wis. 2d 179, 564 N.W.2d 735 (1997) (Widow's failure under state statute to elect up to one-half of her deceased spouse's property and instead accept the will which left her nothing made her ineligible for Medicaid assistance.); *Matter of Estate of Dionisio v. Westchester County Dept. of Social Servs.*, 244 App. Div. 2d 483, 665 N.Y.S.2d 904 (1997), *leave to appeal denied*, 91 N.Y.2d 810 (1998) (Widow's waiver of her marital rights to a portion of her husband's estate was a transfer of resources for purpose of qualifying for medical assistance.); *Matter of Mattei*, 169 Misc. 2d 989, 647 N.Y.S.2d 415 (1996) (No functional difference between renunciation of inheritance and nonexercise of right of spousal election because both are rights of inheritance and assets for Medicaid purposes.).

Because Mrs. Miller essentially established her own trust with her own funds for her own benefit, *Myers*, 254 Kan. at 469, is inapposite. In *Myers*, a mother's will created a trust for the care, support, and maintenance of her disabled son during his lifetime and bequeathed $110,000 of her own money to the trust.

The instant holding is not only a logical extension of *Williams*, but it also supports the public policy we articulated in *Jackson*, 249 Kan. at 644. There, we reversed both the district court and the Court of Appeals and held that the net income generated by a trust (because payment was mandatory by the trustee) was an available resource to the beneficiary during the period of time she received state medical assistance. We stated:

"There is yet another reason to hold the income of the Jackson Trust was available to Jackson—public policy. Public assistance is available to the destitute and truly needy. It is not intended to provide subsistence to those with other resources.

. . . .

"Public assistance funds are ever in short supply, and *public policy demands* they be restricted to those without resources of their own." (Emphasis added.) 249 Kan. at 644.

In addition, this holding prevents Mrs. Miller, as a lifetime beneficiary, from having her cake and eating it too. *Cohen v. Com-*

*missioner of Division of Medical Assistance,* 423 Mass. 399, 403, 668 N.E.2d 769 (1996). It also reduces the temptation of her daughter to make her own slice of the cake larger at the expense of taxpayers. As one of only three remaindermen, and as the only trustee (possessing sole discretion to distribute trust principal), the daughter has the actual power, and at least a theoretical incentive, to first maximize the use of Medicaid sources for her mother, which in turn leaves a maximum inheritance for herself and her brothers.

Against these strong considerations, Mrs. Miller argues that Medicaid's prohibitions do not apply to testamentary trusts. She cites *Skindzier v. Commissioner of Social Services,* 258 Conn. 642, 784 A.2d 323 (2001), and points to the language of 42 U.S.C. § 1396p(d)(2)(A) (2002):

"For purposes of this subsection [treatment of trust amounts], an individual shall be considered to have established a trust if assets of the individual were used to form all or part of the corpus of the trust and if any of the following individuals *established such trust other than by will:*

"(i) The individual.

"(ii) The individual's spouse.

"(iii) A person, including a court or administrative body, with legal authority to act in place of or on behalf of the individual or the individual's spouse.

"(iv) A person, including any court of administrative body, acting at the direction or upon the request of the individual or the individual's spouse." (Emphasis added.)

We disagree with Mrs. Miller for several reasons. First, to summarize what was discussed earlier, this trust was not established by Mr. Miller's will. According to our decision in *Williams,* 258 Kan. 161, the trust was instead essentially established by Mrs. Miller when her share of the marital estate was placed into it after his death. Her funds remain in the trust for her benefit, subject only to the discretion of her daughter.

Second, Mrs. Miller's position is inconsistent with Congressional intent. In this case and others, this court has determined legislative intent not only by considering the language used in the statute, but also by looking "to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested. In construing statutes, the legislative inten-

tion is to be determined from a general consideration of the entire act." *West v. Collins,* 251 Kan. 657, 667, 840 P.2d 435 (1992).

Moreover, this court, and others, have examined legislative history and other resources to avoid unreasonable or absurd results arising from the literal reading of statutory terms. "Looking beyond the naked text for guidance is perfectly proper when the result it apparently decrees is difficult to fathom or where it seems inconsistent with Congress' intention, since the plain-meaning rule is rather an axiom of experience than a rule of law, and does not preclude consideration of persuasive evidence if it exists.' [Citations omitted.]" *Public Citizen v. Department of Justice,* 491 U.S. 440, 455, 105 L. Ed. 2d 377, 109 S. Ct. 2558 (1989). For examples where Kansas appellate courts have looked beyond the naked text for guidance and avoided unreasonable results, see *State v. Becker,* 264 Kan. 804, 958 P.2d 627 (1998); *State v. Le,* 260 Kan. 845, 926 P.2d 638 (1996); *Farmers Co-op Elevator v. Kansas Employment Security Bd. of Review,* 25 Kan. App. 2d 567, 966 P.2d 699, *rev. denied* 266 Kan. 1108 (1998).

Not only Congress' words but also its amendatory actions have expressed its intent: to eliminate formalistic devices which shelter assets for the potential benefits of heirs and which divert scarce federal and state resources from low-income elderly and disabled individuals, and poor women and children. The statutory language cited by Mrs. Miller comes from a Congress that also passed an amendment in 1986 to close a loophole that had allowed individuals who were not otherwise eligible for public assistance to shield their assets in trusts in order to receive Medicaid. By carving out only one "narrow exception, Congress implicitly evidenced an intent to embrace all other trusts within the ambit of MQTs." *Ronney,* 210 Mich. App. at 319. This is the same Congress that passed more restrictive laws in 1993 to end remaining abuse and created only three specific exceptions at that time. See 42 U.S.C. § 1396p(d)(4)(A), (B), and (C) (2002).

Congress has felt so strongly about trusts harmful to Medicaid that it has twice attempted to impose criminal penalties on certain transfers of assets made for the purpose of achieving Medicaid eligibility. In 1996, Congress passed the "Granny Goes to Jail" law,

which made it a crime to transfer assets for purposes of achieving Medicaid eligibility. See 42 U.S.C. § 1320a-7b(a)(6) (Supp. II 1996). This law was replaced in 1997 with the "Send Granny's Adviser to Jail" law, which made it a crime to provide advice, for a fee, about transferring assets for purposes of obtaining Medicaid. 42 U.S.C. § 1320a-7b(a)(6) (Supp. III 1997).

There are no cases examining the exact issue which is before us. The case cited by Mrs. Miller, *Skindzier v. Commissioner of Social Services*, 258 Conn. 642, examined whether the establishment and funding of a testamentary trust by one spouse for the benefit of a surviving spouse was a Medicaid disqualifying transfer of assets for less than market value. It makes no mention whatsoever of spousal elective shares nor does it otherwise specify whether the survivor spouse's property was placed in the trust. Additionally, the *Skindzier* testamentary trust apparently prohibited the trustee from paying any principal to the beneficiary.

In the treatise *Advising the Elderly or Disabled Client* the authors support our holding.

"*An applicant is considered to have established a trust whenever the applicant's assets were used to fund all or part of the trust.* The applicant is *also* treated as having established a trust if any of the following individuals, other than by will, established such a trust: the applicant's spouse; a person such as a guardian or an agent acting under a power of attorney, with legal authority to act in place of or on behalf of the applicant or the applicant's spouse; or a person or a court acting at the direction or at the request of the applicant or the applicant's spouse." (Emphasis added.) Frolik and Brown, *Advising the Elderly or Disabled Client* § 14.05[2][a] (2d ed. 2002).

In short, we see no practical difference between the results of the inter vivos trust in *Williams* and the alleged testamentary trust in the case at hand. Both involve a person's assets being placed in a trust created by that same person for her own benefit, followed by her application for Medicaid benefits.

Reversed.