No. 113,266

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Estate of
CHARLES V. CROSS, Deceased.

SYLLABUS BY THE COURT

1.

On the facts of this case, the district court's order finding that the surviving spouse was not entitled to an elective share of decedent husband's estate constituted a final determination of the surviving spouse's interest in the decedent husband's estate and thus constitutes a final appealable order.

2.

Interpretation of a statute is a question of law. An appellate court is not bound by the district court's interpretation of a statute and is obligated to interpret a statute de novo.

3.

Effective January 1, 1995, the Kansas Probate Code was amended to change the manner in which the spousal elective share is calculated. As amended, a surviving spouse now has the statutory right to take an elective share percentage of the decedent's augmented estate under K.S.A. 59-6a202. The augmented estate is the sum of the values of all property that constitutes the decedent's net probate estate, the decedent's nonprobate transfers to others, the decedent's nonprobate transfers to the surviving spouse, and the surviving spouse's property and nonprobate transfers to others. K.S.A. 59-6a203.

4.

Both before and after January 1, 1995, a surviving spouse had the right to waive any or all of the elective share rights to which the surviving spouse would be statutorily entitled.

5.

A valid waiver by a surviving spouse of a right of election against a will, to the homestead, homestead allowance, exempt property, and family allowance, or all of them, must meet the following requirements: (1) It must be in the form of a written contract, written agreement, or written consent to an instrument; (2) it must be signed by the party waiving the right; (3) it must have been executed voluntarily; (4) the waiving party must have been provided a fair and reasonable disclosure of the decedent's property; and (5) the waiving party must have adequate knowledge of the decedent's property. K.S.A. 59-6a213(a), (b).

6.

The legal sufficiency of a spousal consent is to be determined as of the time the document evidencing consent was made.

7.

On the facts of this case, the consent and waiver signed by a surviving spouse before 1995 remains a valid and enforceable waiver of all spousal elective share rights, notwithstanding amendments made to the Kansas Probate Code in 1995 changing the manner in which the spousal elective share is calculated.

Appeal from Butler District Court; CHARLES M. HART, judge. Opinion filed February 5, 2016. Affirmed.

*Rachael K. Pirner*, *Paula D. Langworthy*, and *Theron E. Fry*, of Triplett, Woolf & Garretson, LLC, of Wichita, for appellant Marilyn G. Cross.

*Lora M. Jennings*, of Martin, Pringle, Oliver, Wallace & Bauer, L.L.P., of Overland Park, and *Brent A. Mitchell*, of the same firm, of Wichita, for appellees Matthew Cross and Barry Cross.

Before STANDRIDGE, P.J., BUSER and SCHROEDER, JJ.

STANDRIDGE, J.:  Marilyn G. Cross sought to exercise her right to an elective share of the estate of her deceased husband Charles V. Cross pursuant to K.S.A. 59-6a202 and K.S.A. 59-6a212. Although conceding she signed a written consent in 1992 to take under Charles' will in lieu of exercising her statutory right to an elective share, Marilyn argues her written consent is no longer enforceable given the Kansas Legislature subsequently modified the manner in which the spousal elective share is calculated. Two of Charles' sons, as coexecutors of his estate (the Coexecutors), challenged Marilyn's right to an elective share, arguing the consent Marilyn signed in 1992 remains enforceable. The district court agreed with the Coexecutors, holding that Marilyn's 1992 consent to Charles' will constituted a waiver of the subsequently modified elective share rights under K.S.A. 59-6a213.

FACTS

Charles and Marilyn were married on February 4, 1983, and were married for 26 years at the time of Charles' death. Charles had three children from a prior marriage: Matthew Cross, Rickert L. Cross, and C. Barry Cross. Marilyn had four children from a prior marriage.

3

During their marriage, Marilyn maintained her own separate checking account and her own separate investment account. Charles maintained a separate money market account that he used for farm operations.

Charles signed his Last Will and Testament on July 20, 1992. The Last Will and Testament provided that Charles willed, devised, and bequeathed to Marilyn the residence they were living in at the time of his death; all of the household goods, furniture, jewelry, and personal effects; and any automobile owned at the time of his death. The residue of his estate was left to his three sons.

On July 20, 1992, Charles also executed a Revocable Trust Indenture as grantor and trustee. Charles and Marilyn were named as cotrustees of the Charles V. Cross Trust. Marilyn signed the Revocable Trust Indenture as cotrustee on September 4, 1992. Pursuant to the Revocable Trust Indenture, the cotrustees were to invest and reinvest the property and pay the net income to the grantor (Charles) during his lifetime. Upon the grantor's death, the surviving cotrustee (Marilyn) was required to pay all of the net income to Marilyn at least quarterly during her natural lifetime. Upon the death of Marilyn, her estate would be entitled to all of the accrued income not paid prior to her death. The Trust also would be required to distribute $100,000 from the corpus of the Trust to each of Marilyn's children. The remainder of the trust estate was to be divided equally among Charles' children. As set forth in the Revocable Trust Indenture, Charles signed, transferred, and delivered to the cotrustees certain property as set forth in Exhibit A to the Trust, which identified numerous assets.

On September 4, 1992, Marilyn signed a Consent of Wife to Charles' Last Will and Testament. Marilyn does not dispute that she signed the consent having sound mind and memory; acting under her own free will and accord; and being under no undue influence, duress, or restraint. Marilyn also does not dispute that when she signed the consent she understood she would receive (1) the income from the Trust established by

Charles on which she was named the cotrustee and lifetime beneficiary, (2) life insurance benefits, (3) beneficiary proceeds from an IRA account, and (4) the property identified in the will itself. Finally, Marilyn does not dispute that by signing the consent she understood Charles' sons would inherit his business and his farm. Marilyn later drafted a separate will for herself, to which Charles agreed and consented.

Charles died testate in El Dorado, Kansas, on September 8, 2009, leaving Marilyn as the surviving spouse. On September 25, 2009, Barry and Matthew filed a Petition for Probate of the Will and Appointing Executor Under the Kansas Simplified Estate Act. Contrary to the provisions set forth in K.S.A. 59-2233, neither the Coexecutors nor their counsel provided Marilyn with the required Notice to Surviving Spouse of Elective Share Right during the probate proceedings settling Charles' estate. On April 22, 2010, a Journal Entry for Final Settlement was entered. Marilyn received the household and personal property items as stated in Charles' will.

On May 3, 2012, Marilyn filed a Petition to Vacate Journal Entry of Final Settlement and to Allow Petitioner to File Petition for Elective Share of Surviving Spouse. The court entered a journal entry finding that the Journal Entry of Final Settlement dated April 22, 2010, was void and therefore set aside. Marilyn was permitted to file a Petition for Elective Share of Surviving Spouse, which she later filed on February 14, 2014.

In her Petition for Elective Share of Surviving Spouse, Marilyn argued she had "not waived her right to take the elective share, homestead and family allowance or any other renounced benefits that would otherwise pass to a surviving spouse by agreement or otherwise." Relying on this argument, Marilyn claimed she was entitled to her statutory elective share percentage of Charles' augmented estate, the homestead, and a spousal allowance. In response to Marilyn's petition, the Coexecutors filed a Petition for Determination of Validity and Effect of Consent of Wife.

5

On December 16, 2014, the court issued its ruling on the Coexecutors' Petition for Determination of Validity and Effect of Consent of Wife. Applying K.S.A. 59-6a213, the court found Marilyn expressly and voluntarily agreed to take under Charles' will and waived her right to take the statutory spousal elective share, her homestead or homestead allowance, and her spousal allowance. As a matter of law, the court then held that Marilyn's 1992 consent to take under Charles' will in lieu of any statutory spousal elective share rights to which she was entitled remained an enforceable waiver at the time Charles died, notwithstanding the fact that Marilyn executed it before passage of a new law providing spousal elective share rights that did not exist under prior law.

JURISDICTION

Before reaching the merits of Marilyn's arguments, we first address a jurisdictional issue raised by the Coexecutors. In a response to Marilyn's docketing statement filed with this court, the Coexecutors questioned whether Marilyn was appealing from a final order as required. Although the appeal was retained, this court asked the parties to brief the jurisdictional issue.

The parties agree that this issue was recently resolved by the Kansas Supreme Court in *In re Estate of Butler*, 301 Kan. 385, 343 P.3d 85 (2015), where the court considered whether a probate order allocating the decedent's severance benefits was a final appealable order. In making its ruling, the court noted that the term "final decision" is an order which definitely terminates a right or liability involved in the action or which grants or refuses a remedy as a terminal act in the case. 301 Kan. at 395. The court concluded that the allocation order determining the decedent's father's interest in a severance package and the subsequent enforcement of that order left no further action to dispose of the issues arising out of the severance package and was, therefore, a final appealable order. 301 Kan. at 395.

The order at issue in the present case—holding that Marilyn was not entitled to an elective share of Charles' estate—definitely terminates a right involved in the action because it is a final determination of Marilyn's interest in Charles' estate and, thus, constitutes a final appealable order. See 301 Kan. at 395. As a result, this court has jurisdiction over the issues raised in Marilyn's appeal.

ANALYSIS

Marilyn presents two points of error on appeal. First, she asserts the district court erred in concluding that her 1992 consent to take under Charles' will and waive the statutory spousal election remains enforceable, notwithstanding the 1995 amendments to the law providing rights to an augmented spousal elective share that did not exist under prior law. Second, Marilyn asserts the district court erred in failing to address her alternative argument that any waiver of her elective share rights was limited by K.S.A. 59-6a213(d).

Resolution of both issues raised by Marilyn requires interpretation of provisions in the Kansas Probate Code (KPC) regarding the elective share of a surviving spouse, K.S.A. 59-6a201 *et seq*. Interpretation of a statute is a question of law. An appellate court is not bound by the district court's interpretation of a statute and is obligated to interpret a statute de novo. See *Cooper v. Werholtz*, 277 Kan. 250, 252, 83 P.3d 1212 (2004).

*Consent and waiver*

Prior to 1995, a surviving spouse's elective share rights were governed by K.S.A. 1992 Supp. 59-603. This statute authorized a surviving spouse who had not consented to take under the decedent's will to either take under the will or exercise the statutory right to an elective share under the laws of intestate succession. If, however, the surviving spouse properly consented to the will in lieu of the right to a spousal elective share under

7

Kansas law, the survivor was bound by such consent to take under the testator's will. K.S.A. 1992 Supp. 59-603(a).

In 1994, the Kansas Legislature amended the KPC to repeal K.S.A. 59-603 and incorporate the elective share provisions set forth in the Uniform Probate Code § 2-201 *et seq.* (UPC), 8 U.L.A. 101 (1998). See *In re Estate of Antonopoulos*, 268 Kan. 178, 181, 993 P.2d 637 (1999). After January 1, 1995, a surviving spouse has a statutory right to take an elective share percentage of the decedent's "augmented estate." K.S.A. 59-6a202(a)(1). The augmented estate is the sum of the values of "all property that constitute[s] the decedent's net probate estate, the decedent's nonprobate transfers to others, the decedent's nonprobate transfers to the surviving spouse, and the surviving spouse's property and nonprobate transfers to others." K.S.A. 59-6a203; see also K.S.A. 59-6a208 (exclusions from augmented estate); K.S.A. 59-6a209 (sequential order of amounts applied to satisfy elective share). A surviving spouse may be eligible to receive a "supplemental elective share amount" if certain conditions are met. K.S.A. 59-6a202(b).

Notably, the statutory amendments expressly left intact the right of a surviving spouse to waive any or all of the elective share rights to which the surviving spouse would be statutorily entitled. K.S.A. 59-6a213(a). The right of a surviving spouse to homestead and statutory allowances for support also remain unchanged, but the amendments added an option to receive a homestead allowance in lieu of the actual homestead itself. See K.S.A. 59-401 (providing for homestead); K.S.A. 59-403 (providing statutory allowances for support of spouse and minor children—the family allowance); K.S.A. 59-6a215 (providing for right to elect homestead allowance in lieu of homestead).

Relying on the amendments described above, Marilyn argues the consent and waiver she executed in 1992 became unenforceable on January 1, 1995, the date the

amendments became effective, because she could not have knowingly waived spousal rights that did not yet exist. We disagree.

A valid waiver by a surviving spouse of a right of election against a will, to the homestead, homestead allowance, exempt property, and family allowance, or all of them, must meet the following requirements: (1) It must be in the form of a written contract, written agreement, or written consent to an instrument; (2) it must be signed by the party waiving the right; (3) it must have been executed voluntarily; (4) the waiving party must have been provided a fair and reasonable disclosure of the decedent's property; and (5) the waiving party must have adequate knowledge of the decedent's property. K.S.A. 59-6a213(a), (b).

The legal sufficiency of a spousal consent is to be determined "as of the time the document evidencing consent was made." *Younger v. Estate of Younger*, 198 Kan. 547, 551, 426 P.2d 67 (1967). In this case, Marilyn concedes the consent to take under Charles' will and to waive the statutory right to an elective share was valid, enforceable, and satisfied the requirements set forth in K.S.A. 59-6a213 when she signed it in 1992. Rather, she argues the consent and waiver she signed in 1992 is no longer valid or enforceable given the Kansas Legislature's 1995 amendments changing the manner in which the spousal elective share is calculated.

Simply put, there is no language in K.S.A. 59-6a213 to support Marilyn's argument that application of the statute is limited to consent documents signed after the KPC amendments went into effect in 1995. In fact, such a distinction would have no support in the law because there is no substantive difference between the pre-1995 and post-1995 versions of the consent statute. When Marilyn consented in 1992 to take under Charles' will and waive her statutory right of election, the statute governing a surviving spouse's elective share provided, in relevant part:

9

"If the survivor consents to the will and all other dispositions subject to a surviving spouse's right of election or fails to make an election, as provided by law, the survivor shall take under the testator's will and all other dispositions subject to a surviving spouse's right of election. The will or other dispositions shall be effective except as to the elected share." K.S.A. 1992 Supp. 59-603(a).

The current statute governing a surviving spouse's elective share provides, in relevant part:

"(a) The right of election of a surviving spouse and the rights of the surviving spouse to the homestead, the homestead allowance or the family allowance, or all of them, may be waived, wholly or partially, before or after marriage, by a written contract, agreement, consent to any instrument, or waiver signed by the surviving spouse." K.S.A. 59-6a213(a).

Thus, although the KPC was amended in 1995 to adopt the manner in which the UPC calculated spousal elective shares, the substance of the law on the issue of consent to take under a spouse's will and waive the spousal elective share provided by statute has not changed at all. Both before and after the 1995 amendment, a surviving spouse may consent in writing to take under a spouse's will and waive, wholly or partially, his or her right to statutory and other elective share benefits that would otherwise pass to the surviving spouse by intestate succession. See K.S.A. 1992 Supp. 59-603; K.S.A. 59-6a213(a).

While we believe the meaning of K.S.A. 59-6a213(a) is clear, one additional rule of statutory interpretation resolves any ambiguity that may arise when that statute is read in its entirety. The maxim *expressio unius est exclusio alterius*, *i.e.*, the inclusion of one thing implies the exclusion of another, may be applied to assist in determining actual legislative intent which is not otherwise manifest, although the maxim should not be employed to override or defeat a clearly contrary legislative intention. Under this rule,

when legislative intent is in question, we can presume that when the legislature expressly includes specific terms, it intends to exclude any items not expressly included in the specific list. *In re Marriage of Killman*, 264 Kan. 33, 42, 955 P.2d 1228 (1998).

Although K.S.A. 59-6a213(a) does not limit its application to those documents signed after the statute took effect in 1995, a different subsection of the same statute specifically references documents executed on or after July 1, 2002, with respect to the waiver of rights to homestead, homestead allowance, and family allowance. See K.S.A. 59-6a213(d). The legislature did not include a similar prospective date limitation in K.S.A. 59-6a213(a) relating to instruments or documents which waive elective share rights. We cannot ignore the fact that the legislature included a prospective date limitation in subsection (d) of the statute but not in subsection (a).

In addition to a lack of statutory support for her argument, Marilyn's position is further impaired by the actual language within the 1992 consent and waiver Marilyn executed. The Consent of Wife signed by Marilyn states:

> "I, Marilyn G. Cross, wife of Charles V. Cross, having had explained to me the provisions of the Last Will and Testament of Charles V. Cross, and all my rights thereunder, and having had explained to me all my rights under the laws of the State of Kansas, including homestead rights and statutory allowances, and fully understanding my rights under said will and under the Statutes of the State of Kansas, do hereby give my voluntary consent to the execution of this will and do hereby voluntary elect and bind myself to accept the terms and provisions of said Last Will and Testament in lieu of all my rights under the laws of the State of Kansas, including homestead rights and statutory allowances."

We find the language used by Marilyn here to be broad enough to waive spousal rights in the additional types of property interests subject to the amended spousal elective share formula that became effective in 1995. And with regard to Marilyn's assertion that

11

she could not have knowingly waived spousal rights that did not yet exist, we find the Supreme Court's discussion in *In re Estate of Ellis*, 168 Kan. 11, 29, 210 P.2d 417 (1949), to be instructive:

> "It may be conceded that in many of our decisions, stress is laid on the fact that the consenting spouse was not advised as to his or her rights under the statutes pertaining to descents and distributions, but in those cases that knowledge, or lack of it, went to the question whether the consent there involved was freely and understandingly given; but it follows that if a review of the circumstances shows that the consenting spouse was fully aware of the estate of the other, and of the disposition made in the will, knew for some period of time that the particular disposition was to be made, made no effort to inform herself, made no protest to documents of testamentary disposal and her consent thereto being prepared and without making any effort to ascertain her rights, executed the consent, it must be held either that she acted intelligently or that she was willing to act unintelligently."

Conversely, we find the cases cited by Marilyn in support of her position to be distinguishable. In *Miller v. Kansas Dept. of S.R.S.*, 275 Kan. 349, 64 P.3d 395 (2003), the decedent executed a will in 1978 that created a testamentary trust over which the trustee had discretion to make distributions of the principal to the decedent's wife for her lifetime. The decedent's wife consented to the will on the same day. After the decedent passed away in 1995, the trustee paid the decedent's wife $1,000 per month from the income and principal of the trust. The decedent's wife later applied for Medicaid benefits. The Department of Social and Rehabilitation Services (SRS) denied the application based on its determination that the full value of the trust was an available resource from which the decedent's wife could pay her bills and found that she was therefore ineligible for Medicaid. The decedent's wife appealed this decision. Following an administrative hearing, the presiding officer held that the income of the trust should be attributed to the decedent's wife for eligibility determination purposes, that the trust was a discretionary trust, and that "to the extent Mrs. Miller waived her rights to the spousal elective share of

her husband's estate, she created a trust which would be an available resource when determining her eligibility." 275 Kan. at 352. On review, the district court held that because the discretionary trust was funded solely with the decedent's property, the principal of the trust was not available when considering the Medicaid eligibility of the decedent's wife.

On appeal to the Kansas Supreme Court, SRS argued that the decedent's wife was ineligible to receive Medicaid benefits because "her consent to the terms of her husband's will, in lieu of her taking her statutory elective share as a spouse, essentially placed her spousal share of the marital estate in the discretionary trust, which makes it an asset currently available to her for determining Medicaid eligibility." 275 Kan. at 356. The Supreme Court agreed with SRS. 275 Kan. at 356-63. Marilyn argues that *Miller* is controlling because the Supreme Court did not construe the wife's 1978 consent to the decedent's will as a waiver of her 1995 spousal elective share rights, instead holding that the discretionary trust was funded by her elective share of the marital estate, notwithstanding her previous consent to the will. But Marilyn's reliance on *Miller* is misplaced because it contains no relevant analysis of the issue currently before us. Neither party in *Miller* raised the issue of whether a consent to a will constituted a waiver of later-enacted elective share statutes pursuant to K.S.A. 59-6a213(a), nor was this an issue directly addressed by the Supreme Court.

In *Re: Estate of Searl*, 72 Hawaii 222, 811 P.2d 828 (1991), the decedent and her husband executed a general warranty deed in 1968 which conveyed all of their rights, title, and interest in certain real estate in Lanikai to the decedent. The decedent executed a will in 1970 and a codicil to the will in 1983 that named her daughter the sole beneficiary of her net estate, which included the Lanikai real estate. The decedent did not name the husband in her will. In 1976, Hawaii adopted the UPC, which included provisions for a surviving spouse's right to take an elective one-third share of the decedent spouse's net estate. Following the decedent's death, the husband filed for an elective share of the

decedent's estate. On appeal to the Hawaii Supreme Court, the decedent's daughter argued that the general warranty deed executed by the decedent's husband conveying all his rights in the Lanikai property to the decedent acted as a waiver of any right to an elective share under the UPC. The Supreme Court disagreed that the husband's conveyance of the property in fee simple constituted a waiver of his right to an elective share, reasoning that at the time the husband had conveyed the property, the UPC had not been enacted and he had no knowledge of his right to take an elective share of the decedent's property upon her death. As a result, the court held that the general warranty deed could not act as a waiver of the husband's statutory right to an elective share. 72 Hawaii at 226-27.

The case here is clearly distinguishable because *Estate of Searl* dealt with a general warranty deed, not a spousal consent to a will. Notably, the Hawaii Supreme Court held that under the warranty deed the husband had merely conveyed his rights in certain property but had not waived his elective share rights under the UPC. 72 Hawaii at 225-27. Indeed, the court specifically noted: "We do not determine whether the general warranty deed would constitute a waiver in accordance with HRS § 560:2-204 [(1985); recodified in 1996 as § 560:2-13]." 72 Hawaii at 227 n.1. Hawaii Rev. Stat. § 560:2-213(a) (2006) is Hawaii's elective share waiver provision, similar to K.S.A. 59-6a213(a). In addition, spousal elective share rights existed in Kansas in 1992 when Marilyn signed the consent; the 1995 amendments merely changed the method of calculating the amount of the surviving spouse's elective share. Compare K.S.A. 1992 Supp. 59-603 with K.S.A. 59-6a202. Unlike the situation in *Estate of Searl*, the elective share rights were not enacted for the first time after Marilyn signed the consent.

At the time Marilyn signed the consent to Charles' will, a surviving spouse was entitled to elect to take one-half of the decedent's estate. See K.S.A. 1992 Supp. 59-602. A surviving spouse also had the right to claim a homestead and a family allowance. See K.S.A. 59-401; K.S.A. 59-403. The plain language of Marilyn's consent to Charles' will

14

demonstrates that she agreed to accept the provisions made for her under the will in lieu of "all" other rights under Kansas law. Thus, by consenting to Charles' will, Marilyn gave up her right to receive her legal share in Charles' estate. The fact that her legal share would have later changed due to legislative amendment is irrelevant. The district court properly determined that Marilyn's 1992 consent to Charles' will constituted a waiver of the elective share statutes amended by the legislature in 1995.

*K.S.A. 59-6a213(d)*

In her second point of error, Marilyn argues that even if the 1992 consent operates as a waiver of her elective share rights, the effect of such a waiver is limited pursuant to the language in K.S.A. 59-6a213(d). Marilyn contends the district court erred in failing to consider this alternative argument below. In response, the Coexecutors argue that we should not consider this issue because Marilyn did not object to the district court's failure to address this argument. See *Fischer v. State*, 296 Kan. 808, 825, 295 P.3d 560 (2013) (party must object to inadequate findings of fact and conclusions of law to preserve issue for appeal). But Marilyn is not disputing the adequacy of the district court's findings or conclusions; rather, she is challenging the district court's ruling that her consent constituted a waiver of her elective share rights by presenting an alternative argument that was also raised below. As a result, we will reach the merits of Marilyn's argument.

K.S.A. 59-6a213(d) was amended by the legislature in 2002. The legislature removed the following stricken language and added the language in italics:

> "(d) Unless it provides to the contrary, a waiver of 'all rights,' or equivalent
> language, in the property or estate of a present or prospective spouse or a complete
> property settlement entered into after or in anticipation of separation or divorce is a
> waiver of all rights of elective share, homestead and family allowance by each spouse in
> the property of the other and a renunciation by each of all benefits that would otherwise
> pass to such spouse from the other by intestate succession or by virtue of any will

15

executed before the waiver or property settlement. *For documents executed on and after July 1, 2002, to waive the homestead, the homestead allowance or the family allowance, or all of them, the language of the document must clearly provide that the homestead, the homestead allowance or the family allowance, or all of them, were understandably and knowledgeably waived by each spouse, if applicable.*" L. 2002, ch. 135, sec. 3.

Marilyn suggests that the legislature's intent in revising K.S.A. 59-6a213(d) was to codify the pre-1995 law by providing that a waiver of all rights in a consent is only a waiver of benefits that would otherwise pass by intestate succession or by virtue of any previously executed will. As a result, she alleges that a waiver of all rights only constitutes a waiver of what the consenting spouse had already agreed to by signing the consent, not any additional rights under the Kansas elective share statutes. To that end, she contends that her 1992 consent could only operate to waive what she would have received under Charles' will.

The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *Nationwide Mutual Ins. Co. v. Briggs*, 298 Kan. 873, 875, 317 P.3d 770 (2014). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. *Cady v. Schroll*, 298 Kan. 731, 738-39, 317 P.3d 90 (2014). K.S.A. 59-6a213(d) provides that a waiver of "'all rights'" constitutes a waiver "of all rights of elective share benefits that would otherwise pass to such spouse from the other by intestate succession or by virtue of any will executed before the waiver . . . ." This portion of the statute remained unchanged following the 2002 amendment. Rather than limiting the elective share benefits that may be waived, it appears that the legislature's purpose in amending the statute was to add the requirement that any document containing a spouse's waiver to the homestead, the homestead allowance, or

16

the family allowance must "clearly provide" that these rights were "understandably and knowledgably" waived. K.S.A. 59-6a213(d).

In any event, Marilyn's argument would require this court to reach an absurd result. Charles' will devised to Marilyn the couple's residence, car, household goods, furnishings, jewelry, and personal effects. By signing the consent, Marilyn expressly elected to accept the terms and provisions of Charles' will. Marilyn's position would have this court find that by signing the consent, she was instead waiving her rights to these items. Such a result is unreasonable. See *Fisher v. DeCarvalho*, 298 Kan. 482, 495, 314 P.3d 214 (2013) (courts must construe statutes to avoid unreasonable or absurd results and presume legislature does not intend to enact meaningless legislation). K.S.A. 59-6a213(d) does not in any way limit the elective share benefits that Marilyn waived by signing the consent to Charles' will.

Affirmed.