105 N.J. Super. 475 (1969)
253 A.2d 184
VIRGINIA HOTCHKIN, PLAINTIFF,
v.
ROBERT FRANCIS HOTCHKIN, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided May 5, 1969.
*476 Mr. Louis B. Le Duc for plaintiff.
Mr. Martin L. Haines for defendant (Messrs. Dimon, Haines and Bunting, attorneys).
WICK, J.S.C.
Plaintiff Virginia Hotchkin, the former wife of Robert Francis Hotchkin, institutes this suit for the partition of various securities which are presently held in the joint names of plaintiff and her ex-husband. Based on the testimony and exhibits presented at trial, I find the pertinent facts to be as follows:
*477 Robert and Virginia Hotchkin were married in Urbana, Illinois, in 1938. Mr. Hotchkin is a certified public accountant and is presently an officer and investor in a rapidly growing corporate complex in the field of induction heating appliances of which Inductotherm Corp. is the parent corporation. Apparently Mrs. Hotchkin was not employed during the couple's marriage nor is she presently employed. The Hotchkins have two children who are now emancipated and financially independent.
For several years prior to August 1966 Mr. and Mrs. Hotchkin experienced marital discord and unhappiness. In August 1966, when their separation was imminent, Mr. Hotchkin advised his wife that he was going to establish a "family trust" for the benefit of her and the two Hotchkin children and that she was to select securities with a total value of $60,000 which were to constitute the assets of that trust. He also advised Mrs. Hotchkin to choose the best income-producing securities and made recommendations in this regard. The selection was to be made from a list (Exhibit P-7 in evidence) of all the stocks held in the joint names of Mr. and Mrs. Hotchkin. According to the valuations set forth in the above exhibit, the total value of the jointly held securities was $194,100 as of June 30, 1966. All the stocks included were public stock exchange securities except the Inductotherm Corp. stock, which is a closed corporation issue.
Pursuant to Mr. Hotchkin's proposal an inter vivos trust agreement dated August 12, 1966 was drafted by Mr. Hotchkin (apparently from a form book) wherein he irrevocably assigned the selected stock to his wife and her sister as co-trustees. The terms of the trust (as amended at the request of Mrs. Hotchkin's attorney) provided that Mrs. Hotchkin would receive all the income for her life with the limited power to invade the corpus, and after her death the remaining trust corpus should be divided equally between the two Hotchkin children. On the basis of the values submitted on plaintiff's exhibit P-7, I find the value of the stocks selected *478 by Mrs. Hotchkin for the trust was $60,050 as of June 30, 1966. The remainder of the jointly held stocks were valued at $34,050, excluding the Inductotherm stock and $134,050 including the Inductotherm stock. All these stocks have been left in joint name and are the basis of this suit. (Meaning stocks not selected by Mrs. Hotchkin.)
On January 17, 1967 the parties completely discontinued cohabitation at their Riverside, New Jersey, home and Mrs. Hotchkin established a temporary residence in an apartment in Collingswood, New Jersey. It was during this time period that Mrs. Hotchkin employed the services of an attorney to advise her with regard to her marital difficulties and the attendant problems. It should be pointed out that at no time prior to the actual trial of this case did Mr. Hotchkin utilize legal counsel to advise him.
Through the negotiating and drafting efforts of Mr. Hotchkin, Mrs. Hotchkin and her attorney, a final separation agreement was executed February 16, 1967. This agreement set forth provisions relating to distribution of property which referred to and were supplementary to the terms of the August 1966 trust agreement. The pertinent provisions of the separation agreement are: paragraph (2), which states that Mr. Hotchkin will pay his wife a monthly support allowance of $600 during the balance of her life or until she remarries; paragraph (3), by which he agrees to execute a new will in which he will provide that one-half of his net estate at his death would be held in trust under the trust agreement of August 1966, and by which he agreed that in the event he made any inter vivos gifts, one-half the amount thereof should be designated for the welfare of his wife; and finally, paragraph (6), wherein the parties agreed as follows:
"* * * that jointly owned stocks and securities shall be returned to joint custody providing each party with access at all times. Any sale or trade shall be made by mutual consent with both parties' signatures, the cash from a sale to be divided equally and new stocks purchased in trade to be registered in the same names as the original stocks * * *".
*479 All the provisions of the separation agreement which related to support payments, property distribution and the restriction on the jointly held securities were incorporated in a judgment of final divorce which was obtained by Mrs. Hotchkin on December 5, 1967 in the State of Nevada.
In March 1968, several months after the judgment of divorce was entered, Mrs. Hotchkin instituted this suit for partition of real estate and the jointly held stock. Subsequently Mr. Hotchkin paid his former wife $14,000 for her interest in the Riverside home, which had been held as tenants by the entireties; therefore the claim with respect to real estate was dismissed.
The evidence adduced at trial shows that in addition to the $600 monthly support payment which Mrs. Hotchkin receives pursuant to the separation agreement, she has the following income-producing assets: stocks from the inheritance from her mother (approximate value $53,000), and a mutual fund investment valued at approximately $57,000. She also receives one-half of the dividends from the jointly held stock in dispute. Mr. Hotchkin derives his income from his salary (approximately $30,066 in 1966), the dividends of stock held in his own name, and dividends from stock held jointly; he also has non-income producing assets such as his home, retirement trusts and life insurance.
As previously indicated, the total value of the jointly held securities to which Mrs. Hotchkin asserts her right to partition was $34,050 on June 30, 1966, excluding the Inductotherm stock. The total value of the Inductotherm stock was estimated to be $100,000 as af the same date, but because of the special restrictions on that stock it appears that the parties considered it apart from the rest of the jointly held stock when the trust agreement was executed. (These restrictions are set forth in an agreement signed by Mr. and Mrs. Hotchkin which gives Inductotherm the option to repurchase the stock if the owner is not employed by Inductotherm).
Although the equitable jurisdiction for partition of personal property is not traceable with certainty, the *480 jurisdiction itself is unquestioned; and where a literal partition of the property is impractical, a court of equity may order a sale of the property and divide the proceeds. Martin v. Martin, 106 N.J. Eq. 258, 260 (Ch. 1930); 4 Pomeroy's Equity Jurisprudence (5th ed.), § 1391, p. 1019; 40 Am. Jur., Partition, § 104, p. 86; 68 C.J.S. Partition § 24, p. 39. Generally, the availability of the judicial remedy of partition is a right which is incidental to the property interest of the co-tenant, notwithstanding the inconvenience or hardship it might cause one of the other co-tenants. Wujciak v. Wujciak, 140 N.J. Eq. 487 (Ch. 1947), 68 C.J.S. Partition § 21, p. 33. On the other hand, it is clear that courts of equity may place limitations on the right to partition, particularly in a case where personal property is involved, because the remedy is conceived in equity, not pursuant to a statute such as N.J.S.A. 2A:56-1 et seq., which governs partition of real property. Martin v. Martin, supra, where the court denied partition of a fund of $10,000 held by a bank under a trust agreement for the benefit of two co-tenants, on the grounds that the co-tenants had no vested possessory rights to the corpus and the objects of the trust had not been accomplished; Baird v. Moore, 50 N.J. Super. 156 (App. Div. 1958), where the court reduced a co-tenant's share of the partitioned property to the extent that the other co-tenant had made expenditures for taxes, interest on a mortgage, and necessary repairs to the property.
In the instant case plaintiff takes the position that the issue is simply whether one of two co-tenants has a right to partition certain securities held in the joint names of plaintiff and her co-tenant. Furthermore, she argues that based on this right she is entitled to one-half of these securities. However, the operative facts previously summarized require that this court view the issue from another perspective. More specifically, where a divorced wife applies for a judicial partition of various securities held in the joint names of plaintiff and her former husband, and where those parties have previously entered into written agreements *481 affecting their rights and obligations with respect to the same property, I am convinced that this court should review the legal effect of those agreements and be guided by equitable principles in seeking a fair and just determination of the property rights of the respective parties. The written agreements referred to here are the August 1966 trust agreement and the February 1967 separation agreement, both of which contain provisions fixing the property rights of Mr. and Mrs. Hotchkin.
Insofar as this case involves property settlement contracts between a husband and wife, they should be enforced in equity only to the extent that they are equitable and fair. Hudson v. Hudson, 36 N.J. 549 (1962); Raymond v. Raymond, 39 N.J. Super. 24 (Ch. Div. 1956); MacFadden v. MacFadden, 49 N.J. Super. 356 (App. Div. 1958). As previously indicated Mrs. Hotchkin selected securities amounting in value to approximately $60,000 for a trust fund from which she receives the income for life and a limited power to invade the corpus. The stocks selected represented approximately 64% of all the stocks jointly held at the time excepting the Inductotherm stock; it represented approximately 31% if the Inductotherm stock were included. If at the time of the foregoing transaction the joint stocks had been divided so that value of the stock assigned by Mr. Hotchkin to the trust was one-half the total value of all the stocks jointly held by these parties, then I believe there would have been a fair, just and voluntary partition by the parties which would estop either of the parties from obtaining a judicial partition at a subsequent date. 68 C.J.S. Partition § 19(b), p. 31, § 47, pp. 73 and 74.
Applying this reasoning an equitable solution to this case is as follows (see 40 Am. Jur., Partition, §§ 52, 83 and 84 regarding powers of equity court to equalize shares of respective parties in a partition suit): With respect to the jointly held stock other than the Inductotherm shares, Mr. Hotchkin should be credited $26,000, which represents the *482 difference in value between the stock distributed to the trust ($60,050) and the value of stock which remained in joint names ($34,050). This credit should be offset against the total value of the Inductotherm stock ($100,000). The remainder ($74,000) should be divided in half so that Mrs. Hotchkin should receive outright the amount of $37,000 in cash or in shares of Inductotherm (if the latter, the shares would still be subject to the restrictions placed thereon by the corporation). Mrs. Hotchkin is estopped from asserting a right to partition with respect to the stocks other than the Inductotherm stock inasmuch as she has received the benefit of more than one-half her share. As indicated below, this conclusion does not affect her right to receive dividends on those stocks. To allow plaintiff her right to partition all of the stock held in joint names at this time would accomplish an unfair division of the property. Clearly, the equitable maxim that he who seeks equity must do equity applies here. Forbes v. Forbes, 137 N.J. Eq. 520 (Ch. 1946).
An alternative reason for denying Mrs. Hotchkin's claim to partition of the jointly held securities is that Mr. and Mrs. Hotchkin by the terms of paragraph 6 of their separation agreement impliedly agreed not to partition the securities in question. The principle of law which allows this conclusion is set forth in 40 Am. Jur., Partition § 5, p. 5, as follows:
"The general principle of law that the right to partition is absolute must be confined in its application to tenancies where the right to partition is left to result as an ordinary legal incident thereof; it was never intended to interfere with contracts between the tenants modifying or limiting this otherwise incidental right; nor to render it incompetent for parties to make such contracts, either at the time of the tenancy or afterwards."
See also Yglesias v. Dewey, 60 N.J. Eq. 62 (Ch. 1900), 132 A.L.R. 666 (1941). Moreover, agreements which are implied, as well as those which are expressed, may operate to limit or modify the right to partition. Michalski v. Michalski, 50 N.J. Super. 454, 462 (App. Div. 1958); 68 C.J.S., *483 Partition § 44, p. 67. Unlike the Michalski case, there have been no changes in circumstances since the agreement that would make it inequitable not to allow partition. Indeed, to allow the plaintiff's demands in this case would be inequitable.
In order for an agreement not to partition to be enforceable it must be in writing and for a reasonable period of time. Ibid; Wujciak v. Wujciak, 140 N.J. Eq. 487 (Ch. 1947). A reasonable construction of paragraph 6 of the separation agreement indicates that the intention of the parties was to retain the stocks in joint custody for the joint lives unless both parties consented to a sale or trade. The parties reaffirmed this intention by incorporating the separation agreement in the divorce decree. To say that paragraph 6 does not require the parties to refrain from a suit to partition would be to consider the provision a nullity. I do not believe this is an unreasonable restraint on alienation since either the mutual consent of the parties or the death of either of them could occur anytime.
Based on the foregoing findings of fact and conclusions, a judgment should be entered under which Mrs. Hotchkin is entitled to cash or stock, as set forth above. However, the stock which remains in the joint names of Mr. and Mrs. Hotchkin retains the incidents of joint ownership (i.e., co-owner entitled to one-half the dividend, right of survivorship), as limited or modified by the separation agreement.