No. 84,681

DONALD F. FISCHER, *Appellant*, v. STATE DEPARTMENT OF SOCIAL AND REHABILITATION SERVICES, *Appellee*.

(21 P.3d 509)

Opinion filed April 20, 2001.

*Michael W. Ryan*, of Ryan, Condray & Wenger, of Clay Center, argued the cause, and *Dustin W. Mullin*, of the same firm, was with him on the brief for appellant.

*Matthew W. Boddington*, of Kansas Department of Social and Rehabilitation Services, argued the cause and appeared on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Plaintiff appeals the district court's affirmance of the order of the Kansas Department of Social and Rehabilitation Services (SRS) classifying resources as countable in determining that the plaintiff was not eligible for Medicaid.

Medicaid is a joint federal-state program, providing medical assistance to eligible persons. The purpose of the Medicaid program

is to provide medical and rehabilitation assistance to the qualifying poor, aged, blind, and disabled persons. See 42 U.S.C. § 1396 (1994). Kansas has elected to participate in the Medicaid program. K.S.A. 39-708c gives the Secretary of SRS (Secretary) the power and duty to determine general policies relating to social welfare and to adopt rules and regulations therefor. K.S.A. 39-708c(s) requires the Secretary to develop plans financed by federal funds and/or state funds to provide medical care for needy persons. The Secretary adopted regulations, which are found at K.A.R. 30-6-34 *et seq.*

When an application for Medicaid assistance is made, SRS is required to make an eligibility determination. K.A.R. 30-6-106 sets out the general regulations for consideration of resources. All resources owned by the applicant are considered in determining eligibility, and for a person entering long-term care, the combined resources of the applicant and the applicant's spouse are considered available to the applicant for an eligibility determination. The resources must have a measurable value and must be real and available. K.A.R. 30-6-106 also sets out the formula for the resource allowance for the community spouse. If the countable resources of the applicant exceed $2,000, the application must be denied. K.A.R. 30-6-107. Conversely, if the countable resources of the applicant spouse are below $2,000, the applicant is eligible for Medicaid assistance.

## Determining Eligibility Requirements

K.A.R. 30-6-108 provides for the treatment of real property:

"(b) Treatment of real property. The equity value of nonexempt real property shall be considered as a resource.

"(c) Exempted real property. The equity value of the following classifications of real property shall be exempt:

(1) The home;

(2) other real property that is essential for employment or self-employment; and

(3) other real property that is producing income consistent with its fair market value."

It is important in this case to note that if the other real property is not producing income consistent with its fair market value, that

property is not exempt. Personal property, unless exempted, is considered a resource. K.A.R. 30-6-109(b). The criteria for classifying personal property is set out in K.A.R. 30-6-109(d), which provides, in part:

"Exempted personal property. The resource value of the following classifications of personal property shall be exempt:

. . . .

"(4) the stock and inventory of any self-employed person that are reasonable and necessary in the production of goods and services;

. . . .

"(9) income-producing personal property, other than cash assets, that is essential for employment or self-employment or producing income consistent with its fair market value. Income-producing property may include the following items:

(A) tools;
(B) equipment;
(C) machinery; or
(D) livestock."

K.A.R. 30-6-111 defines applicable income. That regulation provides:

" 'Applicable income' means the amount of earned and unearned income that is compared with the appropriate protected income level to establish financial eligibility. (a) Non-SSI. All earned income shall be considered applicable income unless exempted in accordance with K.A.R. 30-6-112 and K.A.R. 30-6-113. Applicable earned income shall be determined as follows.

. . . .

"(2) For self-employed persons, adjusted gross earned income shall equal gross earned income less cost of the production of the income. Income-producing costs shall include only those expenses directly related to the actual production of income. A standard deduction of 25% of gross earned income shall be allowed for these costs. If the person wishes to claim actual costs incurred, the following guidelines shall be used by the agency in calculating the cost of the production of the income.

. . . .

"(d) Applicable unearned income.

(1) All net unearned income shall be considered to be applicable income except that the provisions of K.A.R. 30-6-112 and K.A.R. 30-6-113 shall apply to persons in an independent living arrangement or in the home-and community-based service program."

The treatment of income is set out in K.A.R. 30-6-110. Income is classified as either "earned income" or "unearned income."

Earned income is income that an applicant earns through the receipt of wages, salary, or profit from activities in which the individual engages as an employer or as an employee with responsibilities that necessitate continuing activity on the individual's part. K.A.R. 30-6-110(a). *All income received or reasonably expected* to be received shall be considered in determining the applicable income for the eligibility base period. K.A.R. 30-6-110(b)(2). This includes income produced by real property exempt under K.A.R. 30-6-108(c)(3).

Prior to the deterioration of Donald Fischer's health, Donald owned and managed the family farm. Donald's wife, Betty Fischer, did not participate in the active management of the farm. Donald entered long-term nursing home care in June 1996. At the time he entered the nursing home, Donald and Betty owned the following assets:

240 acres of farm land        $123,300.00

(The Fischers rented out their farm land and received rental income. There is no information included in the 1998 application to determine how Donald was involved in the management of the farm or if he retained authority to direct the tenant in the planting, tilling, and harvesting of the crops in 1996.)

| | |
|---|---|
| Building site, 8.8 acres | 36,000.00 |
| 32 acre farm, Betty (not Donald) owned | |
| 40 percent | 8,201.00 |
| Grain and hay | 2,800.00 |
| Loader | 2,400.00 |
| Feed wagon | 400.00 |
| Cattle | 7,846.00 |
| Stock trailer | 3,700.00 |
| Checking at Tri-County National Bank | 6,082.91 |
| Checking at Community State Bank | 576.98 |
| Second checking at Tri-County National Bank | 3,810.55 |

Donald began selling off his real estate after his admission to the nursing home in 1996. On October 6, 1998, after the Fischers had sold their farm resources, Betty filed an application on behalf of Donald for SRS Medicaid assistance.

The application asked for a description of two sets of assets: assets owned at the date the applicant entered long-term care (1996) and assets owned at the date of application (1998). There are two application forms in the record because, after the applicant fills out an application and turns it into SRS, SRS fills out an identical application for the applicant where it determines and classifies the assets (countable or exempt).

## Fischer's 1998 Application for Medicaid

The 1998 application required the Fischers to list their nonexempt countable assets owned at the time Donald entered long-term care (1996). The application stated: "Do *not* list items that are exempt." The application also required the Fischers to provide the "equity value" of those countable assets. The Fischers listed the farm property as nonexempt, countable property and included the equity value of the property. The application required the listing of countable real property, liquid assets, nonexempt countable motor vehicles, life insurance polices, and all other assets. The application did not specifically require income to be listed as another asset.

After the listing of countable assets at the time the applicant entered long-term care, the application provided a formula for computing the "spouse resource allowance." The formula was one-half of the total equity value of the nonexempt countable resources owned at the time the client entered long-term care. If the value is $15,384, then $15,384 shall be the amount of the community spouse resource allowance. If the value is over $76,740, then the $76,740 figure is used. Because the Fischers calculated that half of the countable assets was $97,558.72, the spousal allowance was $76,740.

The next section of the application required the applicant to list the resources owned at the date of the application. Here, the Fischers no longer owned what they considered to be countable real estate, so they did not list any nonexempt countable real estate. All the Fischers' nonexempt countable assets at the date of the application were liquid assets, totaling $54,387.45.

The final section of the application took the total equity value of currently owned (date of application) nonexempt countable assets (which the Fischers had calculated at $54,387.45) and subtracted from that amount the spousal allowance, which had been calculated at $76,740. The result was less than zero, so, according to the Fischers' application, Donald was eligible for Medicaid.

### SRS 1998 Determination

SRS took the figures provided by the Fischers in their application and "re-classified" the assets. SRS determined that the real farm property and farm implements owned by Donald at the time he entered long-term care (1996) were exempt property. The reason given was: "Income Producing." How SRS arrived at the determination that the farm land was "income producing" is not shown on the document. Because the property, according to SRS, is classified as exempt, it was excluded from the resource assessment determination.

The result of classifying the farm property as exempt is that the total value of countable assets at the time Donald entered long-term care is reduced to the amount of the Fischers' liquid assets, $10,470.44. This figure is then divided by one-half. That value is $5,235.22. Because this figure is less than the total community spouse resource allowance, SRS determined that Betty's spousal allowance is $16,152. (The minimum community spouse allowance was increased by the Secretary during the pendency of this case, but for purposes of these calculations, the difference is immaterial.)

SRS determined that the Fischers' nonexempt countable assets at the time of Donald's application was correct as stated on the Fischers' application. Subtracting SRS's determination of the spousal allowance from the total equity of currently owned (1998) nonexempt countable assets, SRS determined that Donald had available resources for his long-term care expenses. Therefore, Donald was not eligible for Medicaid because SRS classified his "income producing" farm property as exempt.

### Agency Hearing

The Fischers requested a fair hearing pursuant to K.S.A. 75-3306 and K.S.A. 77-501 *et seq*. At the agency hearing, the attorney

for the Fischers argued that SRS had cited no authority for changing the classification of the property from nonexempt countable (Fischer's application) to exempt (SRS's determination). The Fischers asserted that because SRS had no authority for reclassifying the property, the classification of the Fischers is assumed to be correct. SRS argued that the fact that the farm property was "income producing" satisfied the definition for "exempt" property; therefore, the property was exempt.

Tim Schroeder, representing SRS, stated:

"If we had actually received an application in June 1996 when the long term care arrangements began, based on that spousal impoverishment rule, most likely, Mr. Fischer would have been eligible for assistance. All of these resources, the income producing whether it was passive or actively engaging in farming, doesn't really make any difference, if it's income producing then the provision states that it is exempt resources and if that's the case then, the community spouse could have owned that, that wouldn't effect eligibility, as resources, total resources were under the $16,000 limit. All of those could have been attributed to the community spouse and in June 1996, if we had gotten an application, Mr. Fischer probably would have been eligible. What happened in the interim, the exempt resources were liquidated and then turned into countable resources and then we got an application and the second point in time we look at is the actual point the application was filed and at that time those resources were now countable. . . . Once again, when Mr. Fischer entered the nursing home in June 1996, he began the process of selling off his farm operations, selling off those assets. By the time he applied for medical in October 1998, he'd sold all his real and personal farm property and transferred into cash all his assets. Essentially, he turned his exempt resources which could have been owned by the community spouse, into nonexempt resources which have to be counted against the resource allowance."

Neither party provided evidence of the fair market value of the farm property or the amount of income produced by the property, which are the two factors in K.A.R. 30-6-108(c)(3) for determining if real property is exempt.

The hearing officer concluded that the farm property

"was used by [the Fischers] as passive rental landlords. It is difficult too see how one can own grain, hay, and cattle and rent out such items. Nevertheless, whether one is actively farming or passively renting farm property and equipment, either use of such property is indeed designed to generate income and as such is used for self-support. *Because these items are used to generate income,* they are resources that shall be *excluded* in determining the resources of an individual and his spouse." (Emphasis added.)

The hearing officer did not apply the standards set out in K.A.R. 30-6-108(c)(3), income consistent with fair market value, to determine that the property was properly classified by SRS as exempt. The hearing officer concluded that because the items were used to generate income, they were exempt; therefore, SRS's determinations were correct, and Donald was not eligible for Medicaid. Donald appealed to the district court.

## District Court

At the district court, the Fischers again argued that there was no basis for the SRS determination that the farm assets they owned at the time Donald entered long-term care were exempt. Fischer pointed out that K.A.R. 30-6-108(c)(2) and (3) provide that for a real asset to be exempt, it must be either essential for employment or self-employment or "producing income consistent with its fair market value." The Fischers contended that the SRS determination that their farm properties were exempt resources was not supported by evidence. The Fischers asserted that because the State had determined the property was exempt, it was the State's burden to show that in 1996 the farm property produced income consistent with its fair market value. Fischer then attempted to introduce evidence that the farm property was not producing income consistent with its fair market value. Fischer cited the Washington County Assessor's office records which indicated that the productive value of the land is $25,740 and the fair market value of the land is $126,320; therefore, the income-producing value was 20 percent of its fair market value.

The district court first noted that the agency's hearing officer had determined that the Fischers' rental farm operation constituted self-employment and was, therefore, exempt from inclusion as a countable resource. The court then addressed the Fischers' attempt to present evidence to the district court that had not been introduced at the fair hearing and found because that information was available at the time of the hearing, the Fischers could not now introduce that evidence in the district court. The district court then determined that none of the exceptions set forth in K.S.A. 77-617 and K.S.A. 77-619 were applicable and that SRS had properly de-

termined that the value of the farm property and personal property supported its finding that the farming operation was exempt and had then correctly determined the community spouse resource allowance. SRS's final order of June 22, 1999, was affirmed. The Fischers appealed to the Court of Appeals. The case was transferred to the Supreme Court pursuant to K.S.A. 20-3018(c).

On appeal, Donald argues that because SRS changed the classification of the property to exempt from the Fischers' designation as nonexempt countable, SRS had the burden to prove that the property was producing income consistent with its fair market value. Fischer contends because SRS did not produce evidence relating to the income and the fair market value of the property, Fischer's classification of the assets as *nonexempt countable* control. SRS points out that under its regulations the burden of producing evidence that income-producing property generated income not consistent with its fair market value is on the applicant, and it was the Fischers' failure to present that evidence which resulted in SRS's classification.

This issue involves judicial review of an agency action under the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601 *et seq*. Our standard of review is statutorily defined. One ground for relief is that the agency has erroneously interpreted or applied the law. K.S.A. 77-621(c)(4). A party seeking relief from an agency has the burden of showing that an agency's order is invalid because the action is based on a determination of fact that is not supported by evidence which is substantial when viewed in light of the record as a whole. K.S.A. 77-621(c).

Whether Donald is eligible for Medicaid assistance is a question dependent on (1) which party has the burden of proof regarding the classification of those resources and (2) whether, on the evidence presented to the agency, the Fischers' resources at the time Donald entered long-term care were exempt or countable resources defined in administrative regulations. The determination of which party shall bear the burden of proof is a question of law and, therefore, this court's review is unlimited. See *Glassman v.*

*Costello*, 267 Kan. 509, 986 P.2d (1999) (review of question of law is unlimited).

The resolution of whether SRS properly classified the Fischers' rental farm operation as an exempt resource depends on who has the burden to produce evidence that the income generated by the farm is consistent with the farm's fair market value. SRS contends that the burden was on the Fischers because allowing applicants to designate what resources are exempt or countable without evidence of such is tantamount to allowing applicants to classify resources in the manner consistent with their interests. Using tax law as an analogy, the Fischers contend that the burden is on SRS to present evidence that a resource is exempt because exemptions are generally exceptions to the rule, and the burden is on the one claiming the exemption.

We note that the United States Supreme Court held in *Lavine v. Milne*, 424 U.S. 577, 582-83, 47 L. Ed. 2d 249, 96 S. Ct. 1010 (1976), that "as is the case when applying for most governmental benefits, applicants . . . bear the burden of showing their eligibility in all respects." In *Lavine*, the Court reviewed a New York statute creating a rebuttable presumption that a person who applies for public assistance within 75 days after voluntary termination of employment has terminated employment for the purpose of qualifying for assistance. The Court held that the presumption made it clear that the applicant bears the burden of proof on the issue.

It is well established that administrative regulations within the statutory authority conferred upon the agency have the force and effect of law. *Bonanza, Inc. v. Carlson*, 269 Kan. 705, Syl. ¶ 6, 9 P.3d 541 (2000). The Kansas Legislature enacted K.S.A. 39-708c(b), which provides that the Secretary of SRS shall have the power and duty to determine the general policies relating to all forms of social welfare which are administered or supervised by the Secretary *and to adopt the rules and regulations therefor.* K.A.R. 30-6-39 requires that each applicant for medical assistance shall "[s]upply, insofar as the applicant or recipient is able, information essential to the establishment of eligibility."

The regulation is consistent with the rationale of *Lavine* in that it places the burden on the applicant to show eligibility. The bur-

den of proof was on the Fischers to prove that the farmland was not exempt. The district court's finding that SRS was correct in its determination that Donald was not eligible for Medicaid is affirmed.

Affirmed.