No. 91,044

REGINA G. BREWER, *Appellee*, v. JANET SCHALANSKY, *et al.*, *Appellant,* and REGINA HELLEBUYCK, *et al.*, *Appellees.*

(102 P.3d 1145)

Opinion filed December 17, 2004.

*Reid Stacey*, of Kansas Department of Social and Rehabilitation Services, Legal Division, argued the cause and was on the briefs for appellant.

*Christopher J. Sherman*, of Payne & Jones, Chartered, of Overland Park, argued the cause, and *Keith Martin*, of the same firm, was with him on the brief for appellee Regina G. Brewer.

*Ted J. McDonald* and *Tim S. Davidson*, of McCormick, Adam & Long, P.A., of Overland Park, were on the brief for *amicus curiae* ManorCare of Kansas, Inc.

The opinion of the court was delivered by

LUCKERT, J.: This is a Medicaid eligibility case in which the Kansas Department of Social and Rehabilitation Services (SRS) denied the application for benefits filed by Joan Seiker Wilson for her aunt, Regina Brewer (petitioner/appellee). SRS found that Brewer had nonexempt available resources in excess of regulatory limits because she held stocks worth approximately $33,000 in joint tenancy with two nieces, Joan Seiker Wilson and Regina Hellebuyck (defendants/appellees).

Brewer inherited the stocks upon her husband's death in 1991. He had received the stock as a benefit of his employment with Southwestern Bell Telephone Company. In 1994, Brewer added her two nieces, whom she had raised, as joint tenants with rights of survivorship of the stock. In 2001, Brewer sought Merrill Lynch's assistance in tracking shares she received from stock splits and as a result of various spin-offs and mergers of telecommuni-

cations companies following the break-up of AT&T. Brewer and her nieces opened an account with Merrill Lynch as joint tenants with rights of survivorship.

At the time of the Medicaid application, the stock could not be sold or otherwise disposed of without the consent of each joint tenant. Both of Brewer's nieces refused to consent to a sale of the stock.

After SRS denied Brewer's application for Medicaid benefits, Brewer requested a fair hearing pursuant to K.S.A. 2003 Supp. 75-3306 and argued that the nature of the parties' ownership of the stock precluded Brewer from selling it or converting it to cash; therefore, the stock was unavailable to Brewer as a resource. The hearing officer entered an initial order upholding the denial of benefits and ruling that the stock was an available resource. The hearing officer found that Wilson, who holds Brewer's power of attorney, had not taken reasonable steps to make the stock available, including legal action to force the sale. Brewer timely petitioned for review by the State Appeals Committee, which affirmed the hearing officer's decision.

Brewer then petitioned for judicial review of the agency's action. The district court reversed SRS's decision, ruling that Brewer was not obligated to file a lawsuit seeking partition because the cost of such a lawsuit would likely exceed any benefit Brewer would receive as a result and because such a lawsuit was unlikely to succeed. The district court chose not to address Brewer's additional argument that federal law precludes SRS from considering the stock as an available resource.

SRS timely appealed, and the appeal was transferred to this court on its own motion pursuant to K.S.A. 20-3018(c).

### Amicus Curiae

ManorCare of Kansas, Inc., the nursing home where Brewer currently resides, has filed an *amicus curiae* brief. That brief contains several appendices which include information about the cost of care, the amount of Brewer's outstanding balance with ManorCare, and a subsequent application for Medicaid filed by Brewer in November 2003. Because these appendices do not com-

ply with the requirement of Supreme Court Rule 6.02(f) (2003 Kan. Ct. R. Annot. 35) that an appendix consist of "limited extracts from the record on appeal," the court will disregard them. See *Thompson v. KFB Ins. Co.*, 252 Kan. 1010, 1015-16, 850 P.2d 773 (1993).

On legal issues, the *amicus* brief generally parallels the arguments Brewer makes in her brief.

## Standard of Review

Because this case involves judicial review of an agency action under the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601 *et seq.*, this court's standard of review is statutorily defined by K.S.A. 77-621. See *Fischer v. Kansas Dept. of SRS*, 271 Kan. 167, 175, 21 P.3d 509 (2001). As applicable to this case, the court may grant relief if the agency has erroneously interpreted or applied the law; if the agency action is based on a determination of fact that is not supported by substantial evidence when viewed in light of the record as a whole; or if the agency's action is unreasonable, arbitrary, or capricious. K.S.A. 77-621(c).

This court makes the same review of an agency's action as does the district court. *Miller v. Kansas Dept. of SRS*, 275 Kan. 349, 353, 64 P.3d 395 (2003). A rebuttable presumption of validity attaches to an administrative agency's actions, and the party challenging the agency's action bears the burden of proving arbitrary and capricious conduct. *Connelly v. Kansas Highway Patrol*, 271 Kan. 944, 965, 26 P.3d 1246 (2001), *cert. denied* 534 U.S. 1081 (2002). The appellate court "must accept as true the evidence and all inferences to be drawn therefrom which support or tend to support the findings of the factfinder. We are to disregard any conflicting evidence or other inferences. [Citation omitted.]" *Connelly*, 271 Kan. at 965.

## Did SRS Correctly Determine that Petitioner was Ineligible for Medicaid Because of Excess Resources?

The declared purpose of the Medicaid program under Title XIX of the Social Security Act is to furnish "medical assistance on behalf

of . . . disabled individuals, whose income and resources are insufficient to meet the cost of necessary medical services . . . ." 42 U.S.C. § 1396 (2000). The program is a cooperative administered by the federal government and participating states. Kansas, as well as any state which chooses to participate in the program, must comply with federal statutory requirements. *Ussery v. Kansas Dept. of SRS*, 258 Kan. 187, Syl. ¶ 1, 899 P.2d 461 (1995). See *Harris v. McRae*, 448 U.S. 297, 301, 65 L. Ed. 2d 784, 100 S. Ct. 2671 (1980).

42 U.S.C.A. 1396a(a)(17)(B) (Supp. 2004) provides that a state plan for medical assistance must "include reasonable standards . . . for determining eligibility for and the extent of medical assistance under the plan which . . . provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient." The statute further limits consideration to such income and resources as would not be disregarded in determining an applicant's eligibility for other programs, including Supplemental Security Income or SSI.

The Kansas Legislature made the plan available to those who have "insufficient income or resources to provide a reasonable subsistence compatible with decency and health" and delegated the specifics of defining eligibility criteria to the Secretary of SRS. K.S.A. 39-709(a)(1). Pursuant to this authority, the Secretary has promulgated regulations specifying eligibility criteria. Among the eligibility requirements is a limitation upon the value of resources which an applicant may own; if the applicant has nonexempt available resources in excess of $2,000, he or she is not eligible for public medical assistance. K.A.R. 30-6-107.

Federal regulations define the term "resources," in pertinent part, as

"cash or other liquid assets or any real or personal property that an individual . . . owns and could convert to cash to be used for his support and maintenance. If the individual has the right, authority or power to liquidate the property, or his share of the property, it is considered a resource." 20 C.F.R. § 416.1201.

This definition reflects two critical components: (1) ownership and (2) the power to liquidate. This case focuses upon the second aspect of the definition.

### Transfer of Assets

Under K.A.R. 30-6-56, a "transfer of assets" for less than adequate consideration which occurs within a 3-year "look-back" period will incur Medicaid eligibility penalties if the inclusion of the assets' value causes the applicant's resources to exceed the $2,000 limit. In this case, Brewer transferred the stock into joint tenancy ownership with her nieces 7 years before her application for Medicaid, well outside the 3-year time limit. Brewer argues that as a result the stock should not be considered as an available resource. ManorCare's *amicus* brief makes a similar argument.

To support her argument, Brewer cites § 3258.8 of the Department of Health and Human Services' (DHHS) Centers for Medicare and Medicaid Services' (CMS) State Medicaid Manual. The manual "makes available to all State Medicaid agencies . . . informational and procedural material needed by the States to administer the Medicaid program." CMS State Medicaid Manual, Part 2, Foreword (A). Directives in the manual are "official interpretations of the law and regulations, and, as such, are binding on Medicaid State agencies." Part 2, Foreword (B.1). Section 3258.8 provides:

"[I]f placing another person's name on the account or asset actually limits the individual's right to sell or otherwise dispose of the asset (*e.g.*, the addition of another person's name requires that the person agree to the sale or disposal of the asset where no such agreement was necessary before), such placement constitutes a transfer of assets."

Brewer argues that if she "transferred" the stock in 1994, it must have been unavailable to her in 2001 when she applied for Medicaid. This argument ignores the fact that K.A.R. 30-6-56 defines "transfer of assets" as "any act . . . which *partially* or totally passes the use, control, or ownership of assets of an applicant or recipient to another person." (Emphasis added.) Under this definition, an applicant may transfer an asset even though it only partially passes out of her control. Thus, there is no reason to automatically deem a transferred asset unavailable. The concepts of transfer and availability of assets are not mutually exclusive. If there remains (1) an ownership interest and (2) the authority or power

to liquidate the property or the applicant's share of the property, the applicant's share of the property is a resource of the applicant regardless of when the partial transfer occurred.

This conclusion is also supported by provisions in the Kansas Economic and Employment Support Manual (KEESM):

"A transfer of assets is an act, contract, or lease which partially or totally passes the use, control and/or ownership of assets to another person or corporation. Thus, for example, adding additional owners to a deed or title or going from sole ownership to joint tenancy shall be regarded as a transfer. Such partial transfers of real property (such as a home or land) could affect eligibility as the value of the property available to the individual has been decreased through ownership. The value of jointly owned real property is prorated and thus the more owners added to the property, the less the value considered for eligibility purposes for any one of them. This would not be true for partial transfers of personal property since the full value of jointly owned personal property is still considered available to each owner." KEESM 5720.

No showing or argument has been made that the provisions in KEESM are rules or regulations under K.S.A. 77-415 *et seq*. KEESM does, however, provide SRS's interpretation of the applicable statutes and regulations. In interpreting administrative regulations, appellate courts generally defer to an agency's interpretations of its own regulations. The agency's interpretation will not be disturbed unless it is clearly erroneous or inconsistent with the regulation. *Schmidt v. Kansas Bd. of Technical Professions*, 271 Kan. 206, 214, 21 P.3d 542 (2001). In this situation, the interpretation is consistent with the regulation.

The partial transfer, even though occurring outside the 3-year look-back period, does not mean that the stock or a portion thereof cannot be considered a "resource" since Brewer maintains an ownership interest.

### Presumption of Equal Ownership

Next, Brewer argues that even if she retained an interest in the stock, her interest was limited to one-third of its value, or approximately $11,000. ManorCare agrees. SRS contends that Brewer's interest in the stock is its full value of approximately $33,000.

The hearing officer, and later the State Appeals Committee, found that SRS was correct in attributing the full value of the stock

to Brewer because her nieces had not contributed to the equity. The administrative decisions were based upon KEESM 5200, which provides: "In situations of joint ownership of resources . . . the full equity value of jointly owned personal property shall (unless otherwise established) be considered in the determination of eligibility." KEESM 5200, section 6. Since the stock had been owned solely by Brewer before she added her nieces as owners, the hearing officer found that Brewer's equity value equaled the full value of the stock holdings, and the Appeals Committee agreed.

However, the district court found that, because joint tenants are presumed to hold property in equal ownership, the value of the stock attributable to Brewer was approximately $11,000. As stated in *Walnut Valley State Bank v. Stovall*, 223 Kan. 459, Syl. ¶ 2, 574 P.2d 1382 (1978), "[t]here is a rebuttable presumption of equal ownership between tenants of joint tenancy property."

Although the hearing officer did not discuss the presumption of equal ownership, SRS argues the presumption of equal ownership is rebutted by any contrary evidence, including evidence that the joint tenants made unequal contributions. In support of this argument, SRS cites *Walnut Valley*. In that case, a judgment creditor of a wife attempted to garnish a joint tenancy bank account established by the wife with her spouse. The court held that the creditor could garnish the account, and such garnishment would sever the joint tenancy, leaving husband and wife as tenants in common. 223 Kan. at 464. The *Walnut Valley* court also concluded that the burden of rebutting the presumption falls on the person attacking the presumption of equal ownership. 223 Kan. at 463. Thus, the wife's creditor could garnish only one-half of the account unless it could prove that the wife had a greater interest. Or, if the wife could prove that she had less than a one-half interest, the creditor would be limited to that amount. 223 Kan. at 463. " 'In the absence of proof establishing their contributions toward the deposits the presumption prevails that plaintiffs were equal contributors thereto and, therefore, equal owners.' " 223 Kan. at 462-63 (quoting *Murphy v. Michigan Trust Co.*, 221 Mich. 243, 190 N.W. 698 [1922]).

Thus, *Walnut Valley* does support SRS's argument that the presumption of equal ownership can be rebutted with evidence regarding the owner's relative contribution to the asset and donative intent. In this case, there is evidence which rebuts the presumption. Brewer was originally the sole owner of the stock and later placed her nieces' names on the account. Hence, Brewer's equity contribution is clear.

However, the analysis should not focus solely upon equity contribution. As *Walnut Valley* further explained, the presumption of equal ownership "is created on the theory of donative intent." 223 Kan. at 462. The court cited a New Jersey case, *Norcross v. 1016 Fifth Avenue Co., Inc.*, 123 N.J. Eq. 94, 196 A. 446 (1938), for its explanation of the theory of donative intent. *Norcross* explained that the opening of a joint tenancy account, with all parties agreeing that the monies deposited are to belong to the parties as joint tenants, constitutes prima facie evidence of donative intent. Under such circumstances, the parties have made a valid gift. 123 N.J. Eq. at 98.

In this case the evidence regarding Brewer's donative intent was conflicting. As suggested by SRS, there was evidence that Brewer placed her nieces' names on the stock account to avoid probate, intended for the funds to be utilized exclusively for her own support during her lifetime, and did not intend for her nieces to access the funds until her death. Also, SRS argues that since the nieces could not sell the stock without Brewer's consent, it can be inferred that Brewer did not intend a complete gift by adding their names to the stock.

On the other hand, there was some evidence that Brewer had placed her nieces' names on the stock as compensation for the support the nieces had provided over the years. Additionally, Brewer's inability to sell the stock without the consent of her nieces can also be argued to support an inference that she gave away her rights of sole ownership.

With this factual background, we must return to the applicable standard of review which is to determine whether the agency erroneously interpreted or applied the law or whether the agency's action is based on a determination of fact that is not supported by

substantial evidence when viewed in light of the record as a whole. K.S.A. 77-621(c).

The district court, in reviewing the agency's action, did not state the applicable standard of review and apparently substituted its own judgment by finding that the presumption of equal ownership had not been rebutted. The weighing of the evidence against the presumption of equal ownership and a determination of Brewer's donative intent are issues of fact, and the district court could not simply substitute its judgment for that of the agency. *Hickman Trust v. City of Clay Center*, 266 Kan. 1022, 1036, 974 P.2d 584 (1999).

The agency concluded that the full value of the stock was attributable to Brewer because her nieces had not contributed to the equity. Thus, SRS rebutted the presumption of equal ownership by presenting evidence of unequal equity contribution. Further, SRS introduced evidence regarding Brewer's intent when she added her nieces as joint tenants, presenting testimony that Brewer placed the stock in joint tenancy in order to avoid probate and did not intend for her nieces to use the property until Brewer's death. Thus, the agency's conclusion was supported by substantial evidence when viewed in light of the record as a whole.

### Partition

Brewer argues that the stock should not be considered an available resource because of impediments to her ability to liquidate the property. The hearing officer and State Appeals Committee recognized that there was a legal impediment preventing disposal of the stock in that Brewers' nieces refused to consent to a sale. However, Wilson, as Brewer's agent pursuant to a power of attorney, has a fiduciary duty to manage her aunt's affairs, including the pursuit of a legal action to force the sale of the stock. Because Brewer, through Wilson, had not taken reasonable steps to overcome the legal impediment, the stock was considered an available resource.

The district court, however, was persuaded that a partition action was unlikely to succeed and that the cost of such an action would

likely exceed Brewer's share of the stock, $11,000. Thus, the district court reversed the decision of the State Appeals Committee.

K.A.R. 30-6-106(c)(1) provides that an asset otherwise available to an applicant will not be considered an available resource if a legal impediment exists which prevents an applicant from disposing of the asset. However, the applicant must take reasonable steps to overcome the legal impediment unless the cost of pursuing legal action would exceed the value of the resource or such an action would be unlikely to succeed. KEESM 5200, section 3 provides:

"a. A resource shall be considered unavailable when there is a legal impediment that precludes the disposal of the resource. *Examples of legal impediments would include* property which is inaccessible pending the disposition of divorce proceedings, *jointly owned property which cannot be disposed of due to the refusal of the other owners to agree to a sale*, or inability to obtain clear title. The client shall pursue reasonable steps to overcome the legal impediment unless it is determined that the cost of pursuing legal action would be more than the applicant or recipient would gain or the likelihood of succeeding in the legal action would be unfavorable to the applicant or recipient." (Emphasis added.)

SRS does not dispute that there was a legal impediment to liquidation. However, at each hearing level it was determined that Wilson, as Brewer's agent through a power of attorney, could file a partition action.

K.S.A. 60-1003(a) allows an action for the partition of real or personal property. See *Mulsow v. Gerber Energy Corp.*, 237 Kan. 58, 60, 697 P.2d 1269 (1985) (K.S.A. 60-1003 sets out the procedure to be followed in a partition action but does not create a substantive right to partition). Generally, the right to partition is recognized whenever property is jointly held. *Miller v. Miller*, 222 Kan. 317, 320, 564 P.2d 524 (1977).

However, Brewer argues that she has no right to force a partition sale of the stock because she voluntarily agreed to hold the stock in such a manner that no joint tenant could transfer the stock without the consent of the other joint tenants. In support, she cites *Hotchkin v. Hotchkin*, 105 N.J. Super. 475, 253 A.2d 184 (1969), for the premise that ownership of stock in a manner that prevents

its sale without unanimous consent of the joint tenants prevents one joint tenant from seeking partition of the stock.

In *Hotchkin*, ex-wife brought a partition suit against ex-husband regarding various jointly held securities. During divorce proceedings, the parties had previously entered into a written separation agreement containing a provision stating that all jointly owned stocks and securities could be sold or traded only upon mutual consent of the parties. The court ruled that, under this provision, the parties had impliedly agreed not to partition the securities; thus, it denied the ex-wife's claim for partition. 105 N.J. Super. at 482.

Kansas also recognizes that a cotenant is not entitled to partition where he or she has entered into an agreement not to partition. *Gore v. Beren*, 254 Kan. 418, 423, 867 P.2d 330 (1994). An agreement not to partition may be implied or expressed. "An agreement not to partition is implied where the purpose of the transaction would be defeated by partition. For instance, an agreement giving cotenants rights of first refusal implies an agreement not to bring a partition action in lieu of a sale to the cotenants." 254 Kan. 418, Syl. ¶ 3.

In *Gore*, the parties had entered into a real estate contract giving each cotenant a right of first refusal before another cotenant could sell his or her interest. The court found this provision did not expressly waive the right to partition but did impliedly waive the right to partition until there was compliance with the provision giving the right of first refusal. 254 Kan. at 425, 428. The court explained:

"Because implied waiver of the right to partition is based on interpretation of a contract or agreement between cotenants, whether an agreement constitutes an implied waiver of the right to partition and the extent of that implied waiver or the condition for restoring the right to partition should be determined on a case-by-case basis. See, *e.g.*, 59A Am. Jur. 2d, Partition § 61; 68 C.J.S., Partition § 44, p. 67. Thus, not every instance where cotenants agree to a preemptive right or right of first refusal provision is automatically deemed to imply waiver of the right to partition. Because the right to partition enjoys a favored status in the law and is 'based on the equitable doctrine that it is better to have the control of property in one person than in several who may entertain divergent views with respect to its proper control and management,' [*Miller v. Miller*, 222 Kan. 317, Syl. ¶ 4, 564

P.2d 524 (1977)], any agreement which purports to waive the right to partition should be strictly construed." 254 Kan. at 426.

In this case, a representative of Merrill Lynch testified that the stock in question cannot be sold or otherwise disposed of without the consent of each joint tenant. Although the record on appeal does not include a copy of an executed agreement containing such a provision, the fact that such a restriction exists is not in dispute. However, what is not clear is whether the restriction was a matter of contract between the tenants or was unilaterally imposed by Merrill Lynch. If it was simply a Merrill Lynch policy that all three joint tenants consent to a sale or transfer of the stock, rather than an agreement between the joint tenants themselves, this would detract from Brewer's argument that her agreement not to sell the stock without the consent of her nieces could be raised as a defense in a partition action. The cases Brewer cited in her brief all involved some agreement, whether in a divorce settlement agreement or a real estate contract, not to partition. The fact that the stock could not be sold in this case without the consent of all three joint tenants appears less due to any agreement they made and more due to the internal policies of Merrill Lynch.

However, at the very least, Brewer has demonstrated that her nieces would have a possible defense to any partition action. Whether the manner in which the stock is held would amount to an implied waiver of the right to partition would need to be determined and would likely be hotly contested. Thus, a partition action would not necessarily be the simple procedure suggested by SRS.

With this in mind, Brewer contends that the agency ignored the exceptions for cost and low probability of success in finding that she was ineligible for Medicaid because she had not taken legal action to force a sale of the stock. As a result, Brewer argues the agency erroneously interpreted or applied K.A.R. 30-6-106(c)(1) in denying her application for benefits. SRS counters that Brewer did not establish her donative intent or present evidence or even argument at the hearing on which the determination of cost of litigation could be based.

Generally, the applicant has the burden of proof to establish eligibility for Medicaid. *Fischer v. Kansas Dept. of SRS*, 271 Kan. 167, 176-77, 21 P.3d 509 (2001). K.A.R. 30-6-39 states that applicants shall "[s]upply, insofar as the applicant or recipient is able, information essential to the establishment of eligibility." Furthermore, the administrative hearing officer's "[f]indings of fact shall be based exclusively upon the evidence of record in the adjudicative proceeding and on matters officially noticed in that proceeding." K.S.A. 77-526(d). Despite this, nothing was presented at the administrative hearing regarding why a partition was not filed, anticipated difficulties with litigation, or potential costs of the action.

Under the KJRA, the court conducting judicial review of the agency action is limited in its review of facts by K.S.A. 77-618, which provides that "[j]udicial review of disputed issues of fact shall be confined to the agency record for judicial review." Some exceptions are provided for, but none apply in this case. See K.S.A. 77-619. In this case, the district court made findings regarding the attorney fees, based upon its own knowledge and expertise, and evaluated the costs and anticipated fees of such an action. In essence, the district court acted as an expert on attorney fees, which it is allowed to do when acting as a factfinder. However, it is error to do so when conducting a judicial review of agency action.

In reviewing the facts which were presented to the agency, the district court is to determine if there was substantial evidence to support the agency's findings. Conflicting evidence or other findings are to be disregarded. See *Connelly v. Kansas Highway Patrol*, 271 Kan. 944, 964-65, 26 P.3d 1246 (2001), *cert. denied* 534 U.S. 1081 (2002). In this case, the district court reweighed the evidence and determined that the costs should be taken from one-third of the stock value, rather than the entire value which the agency had determined was available to Brewer.

Brewer failed to meet her burden to establish that the cost of the partition action would exhaust her equitable interest in the stock value.

### Federal Law

Both Brewer and ManorCare argue that the provisions of K.A.R. 30-6-106(c)(1) are contrary to controlling federal authority which

prohibits states from considering resources that are not available to applicants under standards set by the Secretary of Health and Human Services or that would not be considered in connection with an application for social security income. Brewer also cites the Social Security Administration's Program Operations Manual System (POMS) in support of her argument.

Under POMS SI 01120.010, "[w]hen there is a legal bar to sale of property (*e.g.*, if a co-owner legally blocks sale of jointly-owned property), we do not require an individual to undertake litigation in order to accomplish sale or access." POMS also gives two examples of situations where property would not be considered a resource. In one example, an applicant and his brother own stock as joint tenants subject to a binding agreement that one will not sell without consent of the other. Under these circumstances, unless the brother agrees to sell, the applicant's share is not considered a resource. In another example, an applicant and her estranged spouse own a cottage which the applicant could not sell unless she took legal action to dissolve her marriage. Because the rules do not require litigation to obtain access to resources, the property is not considered a resource.

First, we note that POMS guidelines are not regulations:

"While Program Operations Manual System (POMS) guidelines do not have the force and effect of law, they do have some value, effect, and persuasive force . . . .

. . . .

"POMS is essentially a set of detailed guidelines relating to interpretations and procedures to be followed by the staff of the SSA. It is at least a clear indication of the agency's intended application of the governing law and its views on what that law means." 70A Am. Jur. 2d, Social Security and Medicare § 17.

The "standards" referred to by 42 U.S.C.A. 1396a(a)(17)(B) are only the regulations adopted by the Secretary and not the rules set out in POMS. Kansas regulations cannot conflict with the federal regulations. However, SSA policy interpretations do not have the force and effect of a statute or regulation by the federal agency. See *Anderson v. Iowa Depart. of Human Serv.*, 368 N.W.2d 104, 108 (Iowa 1985).

In this case, K.A.R. 30-6-106(c)(1) is a reasonable standard for determining Medicaid eligibility and does not conflict with a federal statute or regulation.

Reversed.

DAVIS, J., dissenting: I respectfully disagree with the majority's conclusions that the full value of the stock is available and attributable to Brewer, that the district court was unable to estimate attorney fees for a partition action, that Brewer must seek to partition the property under state and federal law, and that Kansas regulations control over federal statutes or regulations concerning eligibility.

In my opinion, the transfer of the stock vested an undivided one-third interest in Brewer and an undivided one-third interest in each of her nieces. Moreover, if, as the majority opines, Brewer must partition, which I do not think the law requires, the value of her share is one-third.

I agree with the district court's determination based on available evidence that the cost of a partition in this case would exceed Brewer's one-third interest. I would therefore affirm the decision of the district court on its determination that the fees would consume Brewer's interest in the stock and for other reasons stated below. See *Drake v. Kansas Dept. of Revenue,* 272 Kan. 231, 239, 32 P.3d 705 (2001) (reason given by the trial court for its ruling is immaterial if the result is correct for any reason).

The majority concludes that a partial transfer of an asset occurring outside the 3-year look-back period does not make the stock an unavailable resource to Brewer. It bases its decision on K.A.R. 30-6-56, which defines "transfer of assets" as "any act . . . which *partially* or totally passes the use, control, or ownership of assets of an applicant or recipient to another person," and upon the Kansas Economic and Employment Support Manual (KEESM) 5720 which suggests that when personal property is partially transferred "the full value of jointly owned personal property is still considered available to each owner." (Emphasis added.)

I agree that the concepts of transfer and availability of assets are not mutually exclusive. However, I disagree that the full value of

the transferred stock was available to Brewer under either federal or state law.

The directives of the Centers for Medicare and Medicaid Services' (CMS) State Medicaid Manual are the "official interpretations of the law and regulations, and, as such are binding on Medicaid State agencies." CMS State Medicaid Manual, Foreward. Section 3258.7 provides:

"[I]f placing another person's name on the account or asset actually limits the individual's right to sell or otherwise dispose of the asset (e.g., the addition of another person's name requires that the person agree to the sale or disposal of the asset where no such agreement was necessary before), such placement constitutes a transfer of assets."

A close examination of this definition and the nature of the transfer in this case demonstrates that Brewer transferred her stock to herself and her nieces in joint tenancy, acquiring an undivided one-third of the stock only. Before the transfer, Brewer had the right to sell or otherwise dispose of the stock; after the transfer Brewer could not sell or otherwise dispose of the stock unless her nieces joined in the sale. Thus, placing the nieces' names on the stock constitutes a "transfer of assets."

It is important to consider the nature of the transfer in question. This is not a joint bank account where placing additional names on the account does not necessarily limit the transferor's control over all the property. See *Walnut Valley State Bank v. Stovall*, 223 Kan. 459, 574 P.2d 1382 (1978). In order to transfer the stock, Brewer had to contact an attorney or broker, bring her original stock certificate to the broker, and make the request to the company issuing the stock that the new stock be vested in herself and her two nieces. The original certificate of her stock, together with her request, is then sent to the company. The company destroys the original certificate and issues a new certificate of stock with all three names entered on the face of the new certificate. Never again will Brewer alone be able to sell the certificate or realize anything but one-third of the proceeds from the sale or disposition of the stock.

It is also important to note that this transfer took place 7 years ago and not for the purpose of removing assets from her estate so that she would be eligible for Medicaid benefits. There is no evi-

dence of fraud in this case. The 3-year look-back provision of federal law is designed to provide the federal government protection against transfers made within 3 years of an application for benefits. I interpret KEESM 5720 as either relating to transfers within the 3-year period or as dealing with partial transfers under local law where the transferor partially transfers his or her interest in personal property but retains control.

In this case, Brewer transferred an undivided two-thirds of the stock she received from her husband's estate. Finding that the whole amount of the stock was available to Brewer ignores the fact that Brewer no longer has control over an undivided two-thirds of the stock in that she retains only an undivided one-third interest in the stock. Her ability to realize her one-third interest is dependent upon her nieces or a partition suit.

In this same vein, the majority opinion attributes the entire value of the stock to Brewer when under federal and state law Brewer is vested with only one-third of the value of the stock. Kansas law is clear, as the majority recognizes that "[t]here is a rebuttable presumption for equal ownership between tenants of joint tenancy property." See *Walnut Valley State Bank*, 223 Kan. 459, Syl. ¶ 2. This same presumption exists upon partition.

Applying a deferential standard of review, the majority found substantial competent evidence supported the Kansas Department of Social and Rehabilitation Services (SRS) conclusion that the full value of the stock was attributable to Brewer because her nieces had not contributed to the equity and Brewer had failed to establish that the stock was a gift to the nieces. However, SRS is the moving party in this case and sought to establish that there was unequal ownership. Thus, SRS must overcome the rebuttable presumption. The evidence relied upon by SRS is that Brewer owned all the stock prior to the transfer and did not gift the property to her nieces but sought to avoid probate. Nevertheless, the evidence established that the nieces claimed their one-third interest in the stock, based on their services rendered or simply because their aunt gave them a one-third interest in stock.

While Kansas law allows for partition of jointly held property, in such a lawsuit Brewer would be claiming only a one-third interest.

Her request would be consistent with the existing rebuttable presumption, and the court would grant her such an interest. See K.S.A. 60-1003; *Miller v. Miller*, 222 Kan. 317, 320, 564 P.2d 524 (1977). If SRS were joined in the partition suit claiming that Brewer had an interest in all of the stock, it is more than likely that a court would acknowledge the nieces' interest some 7 years after the transfer, especially since there is no allegation of incompetency. However, as the trial judge noted, based upon a suit involving SRS, the nieces, and Brewer, a partition suit would be prolonged and complicated. Thus, Brewer would expend more in fees than the one-third value of the stock.

I disagree with the majority's conclusion that the district court substituted its judgment for that of the administrative tribunal in this case. Rather, after considering the evidence in the administrative hearing and giving consideration to Kansas and federal law, the nature of the transfer of stock vesting only a one-third interest in Brewer, the time-lapse between the transfer and eligibility determination, the determined attitude of the nieces concerning the property, and the lack of any substantial rebuttable evidence by SRS, the district court determined that Brewer's interest in the stock was an undivided one-third and partition would consume such interest.

The district court is an expert in the area of attorney fees and can draw on and apply its own knowledge and expertise in evaluating the amount of fees consistent with the evidence. See *Davis v. Miller*, 269 Kan. 732, Syl. ¶ 6, 7 P.3d 1223 (2000). Both determinations by the district court are supported by the evidence and certainly reflect Brewer's transfer of interest and the cost of fees in partition. The court made its determination of fees based upon the only available evidence. In my opinion, its decision should be affirmed.

Federal law and policy support the alternative conclusion that the stock in question should not be considered an asset for purposes of determining Brewer's eligibility for assistance. We deal with federal funds administered by the State of Kansas. Federal law and policy suggest a result different than the majority opinion,

yet, the majority bases its decision almost exclusively upon K.A.R. 30-6-106(c)(1), which provides:

"(c)(1) Resources shall be considered available both when actually available and when the applicant or recipient has the legal ability to make them available. A resource shall be considered unavailable when there is a legal impediment that precludes the disposal of the resource. The applicant or recipient shall pursue reasonable steps to overcome the legal impediment unless it is determined that the cost of pursuing legal action would exceed the resource value of the property, or that it is unlikely the applicant or recipient would succeed in the legal action."

If federal law and policy were given some sway in interpreting state law, the result in this opinion would be different. The following federal law and policy concerning eligibility for federal Medicaid funds was virtually ignored by SRS in the hearing below and should be applied to affirm the district court.

The federal Medicaid Act was enacted as a *cooperative* federal/state program to provide health care to certain individuals.

"While a state is not required to participate in Medicaid, once it elects to do so, it must comply with the Medicaid statute and the regulations promulgated by the Secretary of the United States Department of Health and Human Services (Secretary of HHS). In determining eligibility, *states may take into account only those resources deemed available by the Secretary of HHS.*" (Emphasis added.) *Martin v. Kansas Dept of SRS,* 26 Kan. App. 2d 511, 512, 988 P.2d 1217 (1999) (citing *Himes v. Shalala,* 999 F.2d 684, 686 [2d Cir. 1993], and *Williams v. Kansas Dept. of SRS,* 258 Kan. 161, 164-65, 899 P.2d 452 [1995]).

"A state, in administering its Medicaid program, must set reasonable standards for assessing an individual's income and resources in determining eligibility for, and the extent of, medical assistance under the program. Those standards must take into account *only such* income and *resources as are available to the* applicant or *recipient as determined in accordance with standards prescribed by the Secretary of Health and Human Service.* 42 U.S.C. § 1396a(a)(17)(B) (1988)." (Emphasis added.) *Ussery v. Kansas Dept. of SRS,* 258 Kan. 187, Syl. ¶ 1, 899 P.2d 461 (1995).

The United States Code relating to grants to states for medical assistance programs further limits consideration to such income and resources as would not be disregarded in determining an applicant's eligibility for other programs, including Supplemental Security Income (SSI). See 42 U.S.C.A. § 1396a(a)(17)(B) (Supp. 2004); Social Security Administration's Program Operation Manual System (POMS) SI 01120.001.

Federal regulations relating to social security administration define resources as "cash or other liquid assets or any real or personal property that an individual (or spouse, if any) owns and *could convert to cash* to be used for his or her support and maintenance." (Emphasis added.) 20 C.F.R. § 416.1201(a). Subsection (a)(1) provides that "[i]f the individual has the right, authority or power to liquidate the property or his share of the property, it is considered a resource. If a property right cannot be liquidated, *the property will not be considered a resource.*" (Emphasis added.) 20 C.F.R. § 416.1201(a)(1).

POMS are important guidelines actually used though not required to be used in determining eligibility for Medicaid. They are required to be used in determining eligibility for SSI. Note the similarity between the two applications; one involves Medicaid funds and the other involves supplemental security income. While the majority rejects POMS because they are not regulations, there is no disagreement that the POMS are used often in determining Medicaid eligibility. POMS provide persuasive authority of the agency's intended application of the governing law and its views on what the law means. See 70A Am. Jur. 2d, Social Security and Medicare § 17.

POMS SI 01120.010 provides that "[w]hen there is a legal bar to sale of property (*e.g.*, if a co-owner legally blocks sale of jointly-owned property), *we do not require an individual to undertake litigation in order to accomplish sale or access.*" (Emphasis added.) In my opinion, the POMS guidelines, coupled with the other federal statutes and regulations above, clearly demonstrate that the Secretary of Health and Human Services would not consider Brewer's interest in the stock a bar to her eligibility for Medicaid funds. A partition suit would not be required under federal law and policy. At the very least, given federal law and policy on this subject, more emphasis should be given to federal law and policy instead of focusing almost exclusively on a Kansas regulation, K.A.R. 30-6-106(c)(1), for the conclusion that the whole value of the stock is attributable to Brewer. This conclusion is a bit of a strain in reaching a result that fails to reflect Brewer's ability to

convert the stock into cash and is only able to do so by a partition suit.

My concern is, as indicated above, that the majority decision forces Brewer to liquidate through a difficult and tedious lawsuit in partition in order that she may realize less than $2,000 from her actual interest of $11,000, a fact the court said would cost more than her interest in the stock. Brewer cannot sell the stock, but she is forced to liquidate and pay fees that in all likelihood would consume the actual interest in the asset.

Based upon the above analysis, I would conclude that under federal law and state law interpreted in light of the federal law and policy, Brewer's interest should not be counted as a resource in determining her eligibility for Medicaid. Alternatively, if Brewer is forced to liquidate her interest in the stock through partition, the evidence of record establishes that her fees would exceed her interest.

I would affirm the district court.